## Leslie Jackson v. True Temper Corporation

[563 A.2d 621]

No. 87-170

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed May 26, 1989

*Sullivan, Sullivan & Enzor,* Rutland, for Plaintiff-Appellee.

*James J. McNamara* and *Cameron W. Tyler* of *McNamara, Fitzpatrick & McCormick*, Burlington, for Defendant-Appellant.

**Dooley, J.** True Temper Corporation appeals the jury verdict that resolved the question certified to the superior court from the Commissioner of Labor and Industry (Commissioner) pursuant to 21 V.S.A. § 670. Leslie Jackson's (claimant's) workers' compensation award was then made by order of the Commissioner. 21 V.S.A. § 671. We affirm.

On April 30, 1982, claimant was operating a rip saw at defendant's saw mill in Wallingford, Vermont. An object hurled from the rip saw struck claimant, knocking him to the floor and causing lacerations to his left arm, and muscle strain to his left side

and back. He was treated at Rutland Regional Medical Center and remained hospitalized until May 21, 1982.

Claimant had a history of alcohol use and was an alcoholic prior to the April 30 accident. In addition, he had encephalopathy: a degeneration of the brain cells caused by malnourishment and alcohol use. While in the hospital and for about a month after discharge, he did not consume any alcohol. His treating physician advised him to continue to abstain from alcohol after his release from the hospital. However, he resumed drinking alcohol while he was still recovering, and a seizure resulted. He was hospitalized briefly for this seizure and again advised to refrain from drinking. He continued to drink periodically and another seizure occurred in September. He has not been permitted to return to work because of his weakened condition.

Claimant argued to the Commissioner of Labor and Industry, and thereafter to the trial court, that the April 30, 1982 injury to his arm and back aggravated his pre-existing alcoholic condition causing seizures. He further argued that the injury required forced abstinence from drinking because of the hospitalization and that the layoff from work following discharge caused him to become despondent. This despondency, claimant contends, caused him to drink alcohol which aggravated his encephalopathic condition resulting in his seizures.

The Commissioner rejected claimant's argument, concluding "it would be highly speculative to conclude that claimant's seizure disorder is causally connected to the treatment of his work-related arm injury." Claimant appealed this decision to the Rutland Superior Court based on the following certified question: "Is the claimant's seizure disorder causally related to his work injury of April 30, 1982?" The trial court, based on a jury verdict, answered the question in the affirmative, and the defendant employer has appealed here. Defendant urges reversal, arguing that claimant failed to prove causation as a matter of law.

The claimant must show a causal connection between the injury and his employment and that he is entitled to benefits. *Egbert* v. *Book Press*, 144 Vt. 367, 369, 477 A.2d 968, 969 (1984). On appeal, a "jury's verdict must stand if supported by substantial evidence." *Marsigli Estate* v. *Granite City Auto Sales, Inc.*, 124 Vt. 95, 99, 197 A.2d 799, 803 (1964). This Court will "test the sufficiency of the facts from a point of view favorable to the award, if this can reasonably be done." *Id.* With these rules in

mind we examine the evidence produced at trial to determine whether any reasonable evidence to uphold the award exists.

Claimant presented the testimony of two expert medical witnesses. Both had treated him for the seizures and associated medical problems. The first doctor testified as follows:

> The basis for my opinion was that as best I can determine Mr. Jackson was a functioning member of society who was able to go to work every day and was able to lead what I would presume would be a relatively normal life. [T]his accident which put him in the hospital, I believe, could be likened to a set of dominoes, which one event triggered after another and forced him to become very despondent and depressed, and to resume drinking after he was discharged from the hospital after an enforced abstinence of approximately three weeks, and I believe that this triggered off his further problems.*

Claimant's second doctor presented this scenario:

> Well, my thinking at the time as I have expressed, is that I felt that Leslie was unable to return to work because of the associated injuries that he sustained and that he probably became more depressed, unable to continue in any sort of positive fashion in his life, . . . . [H]e was predisposed to develop complications in these categories, and with the drinking he developed the convulsions.
>
>   . . . .
>
> I think the fact that he was debilitated from whatever injury he had and predisposed to more drinking would exaggerate the effects of alcohol on his system, and the whole clinical contents of alcoholism could have been exaggerated by his inability to perform his usual work.

Based on the above expert testimony, claimant pursued three interrelated theories of causal connection between the accident and the seizures: (1) enforced abstinence from alcohol during his hospitalization for the rip saw injury caused a withdrawal reaction which led to the seizures when claimant again consumed alcohol; (2) hospitalization led to depression which caused him to

---

* While this testimony is prefaced as the "basis for my opinion," it is actually the statement of the doctor's opinion.

drink more heavily which brought on the seizure; and (3) the rip saw injury caused him to be in a weakened condition so that, when he resumed drinking, the seizures resulted. Because neither of the expert medical witnesses was willing to testify that claimant suffered from withdrawal symptoms, we find that the first theory was not supported by the testimony.

The second theory was also not supported by the testimony. " 'Opinions must be based on facts disclosed by the evidence in the case and not in whole or in part upon speculation of the witness as to what might have been such evidence.' " *In re New England Telephone & Telegraph Co.*, 135 Vt. 527, 536, 382 A.2d 826, 833 (1977) (quoting *Bliss* v. *Moore*, 112 Vt. 185, 190, 22 A.2d 315 (1941); see also Reporter's Notes, V.R.E. 703 (discussion of *New England Telephone & Telegraph* opinion). Neither doctor had direct knowledge that claimant was depressed and had increased his alcohol consumption. Claimant testified in this case but never stated he was depressed or described symptoms of depression. Moreover, his testimony was that the first seizure occurred on the first incident of alcohol consumption following his release from the hospital and he consumed only three beers at that time. He further testified that he hardly drank at all between the first and second seizure. It is clear that the testimony by both experts regarding claimant's depression or despondency was pure speculation and therefore does not provide support for claimant's second theory of a causal connection. We are left only the third theory: that claimant was so weakened by the accident and following treatment that the resumption of drinking brought on the seizures.

Defendant raises three objections to this third theory of causation. Defendant argues: (1) no showing was made that the seizure would not have occurred without the accident; (2) the expert testimony was speculative; and (3) the testimony did show that the seizures were caused by claimant's resumed drinking and not his arm injury. Although this case presents a difficult line between related and unrelated injuries, we agree with claimant that his seizures were work related.

Our law is clear that the aggravation *or acceleration* of a pre-existing condition by an employment accident is compensable under the workers' compensation law. *Campbell* v. *Heinrich Savelberg, Inc.*, 139 Vt. 31, 35-36, 421 A.2d 1291, 1294 (1980); *Laird* v. *State Highway Dep't*, 112 Vt. 67, 86, 20 A.2d 555, 565

(1941); *Gillespie* v. *Vermont Hosiery & Machinery Co.,* 109 Vt. 409, 415, 199 A. 564, 566 (1938). We stated in *Gillespie* that "the disease, if left to itself, and apart from any injury, would, in time, have inevitably caused a complete disability, but this is not the test; as it was, the disability came upon the claimant earlier than otherwise would have occurred." *Gillespie,* 109 Vt. at 415, 199 A. at 566. The medical evidence in the case at bar demonstrates the acceleration of claimant's pre-existing alcoholism. The claimant was ill from the effects of alcohol. His condition might very well have eventually worsened and resulted in the seizures and disability without any injury. The medical experts' testimony, however, that the rip saw accident accelerated the disability supports the answer to the certified question. Thus, the disability is compensable.

We cannot accept the second objection in light of our precedents. In *Burton* v. *Holden & Martin Lumber Co.,* 112 Vt. 17, 20, 20 A.2d 99, 100 (1941), the Court explained the standard for medical causation in workers' compensation cases as follows: "There must be created in the mind of the trier something more than a possibility, . . . . and the inference from the facts proved must be at least the more probable hypothesis, with reference to the possibility of other hypotheses." Normally, where "the physical processes . . . are obscure and abstruse, and concerning which a layman can have no well founded knowledge and can do no more than indulge in mere speculation," the inference must be provided by expert testimony. *Id.* at 19, 20 A.2d at 100. See also *Marsigli Estate,* 124 Vt. at 103, 197 A.2d at 805 ("If expert medical evidence establishes a causal connection between the results of the injury incurred in performance of the work . . . and an aggravation or acceleration of the existing disease, the award must stand."). The expert testimony must meet a standard of "reasonable probability" or a "reasonable degree of medical certainty." *Campbell,* 139 Vt. at 34, 421 A.2d at 1293.

The opinions in this case were given to a reasonable degree of medical certainty. The opinions were not as precise as they might have been. Defendant, however, was free to explore the "underlying facts or data" for the opinions on cross-examination. See V.R.E. 705. Weaknesses in the basis for the opinion and the precision of the opinion properly go to the weight to be accorded it by the trier of facts. *In re E.G.,* 139 Vt. 171, 175, 423 A.2d 1197,

1199 (1980). There was no error in relying on the opinions to find causation.

The third objection, that the testimony shows the alcoholism triggered the seizures, and that the verdict must be overturned, is not supported. Essentially, defendant is arguing that claimant cannot recover because his resumed drinking was caused by his alcoholism — and not by the accident — so that the resumed drinking is a superseding intervening cause. Claimant, however, as an alcoholic, was subject to "an irresistible and uncontrollable desire to drink alcohol" as part of his pre-existing disease. See *Wheeler* v. *Glens Falls Ins. Co.,* 513 S.W.2d 179, 183 (Tenn. 1974). We are unwilling to find that claimant's return to drinking can be said to be a intervening cause that breaks the causal chain between his arm injury and his seizure. Compare *McKane* v. *Capital Hill Quarry Co.,* 100 Vt. 45, 47, 134 A. 640, 641 (1926) (suicide that is the result of a "voluntary, wilful choice" is a new and independent agency which intervenes and breaks the chain of causation). In any event, defendant never raised a theory of intervening cause before the Commissioner or the trial court. It is not a ground for denial here.

Sufficient evidence supports the trial court's finding of causation. The jury verdict, therefore, that there was a causal link between the rip saw accident and claimant's seizures must be upheld.

*Affirmed.*

**Peck, J.,** dissents without opinion.