2009 VT 49

### Debra BRACE v. VERGENNES AUTO, INC.

[978 A.2d 441]

Nos. 07-429 & 08-046

¶ 1. May 22, 2009. In this workers' compensation case, employer appeals the superior court's decision concluding that claimant's left shoulder injury was work-related and that she had not reached a medical end result as of July 2005. We affirm.

¶ 2. Claimant Debra Brace injured her right shoulder while working for employer Vergennes Auto, Inc. in July 2003. She had surgery in December 2003 after physical therapy failed to improve the condition or resolve her pain. She continued physical therapy following the sur-

gery, but then began to feel pain in her left shoulder. Her physical therapist and her treating physician, Dr. Rosenberg, noted the pain in her left shoulder in the summer of 2004. Meanwhile, her range of motion in her right shoulder decreased. An MRI revealed a rotator cuff tear in that shoulder, and in January 2005, Dr. Nichols, an orthopedic surgeon, performed a second surgery on the right shoulder. Within days of the surgery, claimant reported to Dr. Nichols that the pain in her left shoulder was increasing, and a follow-up MRI revealed a rotator cuff tear in that shoulder.

¶ 3. Claimant declined to have surgery at that time because she continued to experience pain in her right shoulder. Dr. Nichols prescribed further physical therapy until a reassessment could be done in July 2005. In July 2005, Dr. Nichols referred claimant to an acute outpatient rehabilitation center for pain management. At the center, claimant saw Dr. Lefkoe, who sought to alleviate her pain and improve her range of motion. In November 2005, claimant decided that she wanted to go ahead with surgery on her left shoulder because the pain in her right shoulder had subsided. She was scheduled to proceed with the surgery, but the workers' compensation carrier denied coverage.

¶ 4. The matter was heard before a Department of Labor hearing officer on June 21, 2006. The questions considered were whether claimant's left shoulder condition was causally related to her right shoulder injury, whether claimant had reached a medical end result by the summer of 2005, and whether the insurer had waived its right to contest claimant's left shoulder claims by voluntarily paying medical bills related to that injury. Following the hearing, the Commissioner of the Department of Labor determined in an October 2006 decision that (1) the insurer had not waived its right to contest the compensability of the left shoulder injury; (2) claimant had failed to prove the requisite causal relationship between the injury to her right shoulder and the injury to her left shoulder; and (3) claimant had reached a medical end result by the summer of 2005. Claimant appealed to the superior court, which conducted a de novo hearing and considered the same questions cited in the administrative proceeding. See 21 V.S.A. § 670; *Pitts v. Howe Scale Co.*, 110 Vt. 27, 34-35, 1 A.2d 695, 698 (1938) (noting that workers' compensation law contemplates county court's de novo review of administrative decision). Following a hearing, the superior court found by a preponderance of the evidence that claimant's left shoulder injury was work-related because it resulted from overcompensating for her right shoulder injury, and that claimant had not reached a medical end result for either shoulder injury by July 2005. Employer appeals, arguing that (1) no competent expert testimony supported the court's conclusion that claimant's right shoulder injury led to her left shoulder injury; (2) the court erred by considering expert evidence from a fact witness; (3) the court erred in concluding that claimant had not reached a medical end result by July 2005; and (4) whether claimant had reached a medical end result with respect to her left shoulder injury was not an issue appealable to the superior court because the Commissioner had not ruled on that question in the first instance.

¶ 5. We first consider employer's contention that the superior court's causation conclusion was not supported by competent expert evidence. In making this argument, employer relies heavily upon the fact that Dr. Nichols testified on direct examination at his deposition that his "guess" was that overuse resulting from claimant's right shoulder injury caused claimant's left shoulder injury. According to employer, because Dr. Nichols did not specifically quantify the likelihood that claimant's left shoulder injury was caused

by the right shoulder injury, and because he acknowledged that the left shoulder injury could have been caused by a nonwork-related incident — specifically, claimant lifting a gallon of milk out of her refrigerator — there was insufficient competent expert testimony linking claimant's left shoulder injury to her previous work-related injury. See *Burton v. Holden & Martin Lumber Co.*, 112 Vt. 17, 22, 20 A.2d 99, 100 (1941) (rejecting proposition that finding of causation could be based on medical evidence of "possibility" of causal connection). Employer further argues that because claimant's attorney acknowledged that claimant's physical therapist was testifying only as a witness to observed facts, and not as an expert, the court erred in relying on the therapist's opinion that claimant's left shoulder injury was caused by overuse in compensating for the earlier work-related injury to her right shoulder.

¶ 6. Upon review of the record, we find more than sufficient medical evidence to support the superior court's finding of causation. See *Jackson v. True Temper Corp.*, 151 Vt. 592, 593, 563 A.2d 621, 622 (1989) ("This Court will test the sufficiency of the facts from a point of view favorable to the award, if this can reasonably be done." (quotation omitted)). First, Dr. Johansson, the osteopath hired by the insurance carrier who testified as an expert witness on behalf of employer, wrote a report, based on a July 2005 evaluation, acknowledging not only the existence of an impairment in both shoulders but also a causal relationship between the work-related accident and both injuries. Although Dr. Johansson backtracked at trial, stating that he had merely assumed causation as claimed and that the focus of that report was the impairment rating, the superior court did not find this testimony credible. To the contrary, the court concluded that Dr. Johansson's report "supports a finding that the left shoulder injury is causally related to the work

injury to the right shoulder." The record supports this conclusion.

¶ 7. Second, Dr. Nichols, previously faulted by employer for "guessing" at causation, stated in a letter to claimant's attorney and in his deposition testimony his opinion that claimant's left shoulder injury most likely resulted from her right shoulder injury and treatment. Dr. Nichols noted that the pain in claimant's left shoulder commenced and worsened following the unsuccessful surgery on her right shoulder. He explained that when pain continues following surgery on one shoulder, quite often rotator cuff disease will develop on the other shoulder because of excessive wear-and-tear caused by overcompensating for the post-surgical shoulder. When asked to give an opinion on the causal relationship between claimant's injuries, Dr. Nichols stated that "there is probably a relationship between the two" injuries because claimant's "left shoulder began to take the brunt of activities" when she was unable to do tasks supported by her right shoulder.

¶ 8. Dr. Nichols further testified that impingement of the left shoulder was consistent with overuse resulting from the injury to the right shoulder. Dr. Nichols acknowledged that lifting a gallon of milk could have further exacerbated claimant's overuse injury to her left shoulder but doubted that any such incident, in and of itself, could have caused the injury. Dr. Nichols explicitly stated that he disagreed with Dr. Johansson's opinion that claimant's left shoulder injury was not caused by her previous injury to her right shoulder. When employer's counsel asked whether the milk-lifting incident, rather than overuse, could have caused claimant's left shoulder injury, Dr. Nichols opined that "[a]nything's possible," but "[s]ome things are more probable than others." On redirect, when asked what was "the most probable pathology" for the left shoulder, Dr. Nichols answered as follows:

My guess is that given what we saw in the MRI, given the chronology and the chronicity of her symptoms, my guess is that [claimant] had an asymptomatic injury to her left rotator cuff that basically wasn't causing any problems; that was exacerbated by the overuse given the fact that her right upper extremity was no longer functioning; and that over time, you know, the milk incident may have exacerbated her symptoms a bit more but the overuse over time with increasing weakness, increasing mechanical issues, created more problems with the left shoulder.

On appeal, employer seizes upon Dr. Nichols' use of the word "guess," arguing that mere speculation is insufficient to support a finding of causation.

¶ 9. We find no merit to this argument. Dr. Nichols plainly opined that claimant's left shoulder injury was caused by her work-related right shoulder injury. Dr. Nichols may not have explicitly quantified his opinion with a specific percentage, but the record amply reveals that he believed, at minimum, that it was more probable than not that overuse resulting from the right shoulder injury led to claimant's left shoulder injury. This satisfies our standard for medical causation in workers' compensation cases:

> "There must be created in the mind of the trier something more than a possibility, . . . and the inference from the facts proved must be at least the more probable hypothesis, with reference to the possibility of other hypotheses." Normally, where "the physical processes . . . are obscure and abstruse, and concerning which a layman can have no well founded knowledge and can do no more than indulge in mere speculation," the inference must be provided by expert testimony.

*Jackson*, 151 Vt. at 596, 563 A.2d at 623 (quoting *Burton*, 112 Vt. at 19, 20 A.2d at 100); cf. *State v. Great Ne. Prods., Inc.*, 2008 VT 13, ¶ 11, 183 Vt. 579, 945 A.2d 897 (mem.) (finding insufficient evidence to support causation where doctor testified that groin pull "may have" caused gangrene condition for which compensation was sought).

¶ 10. In this case, the evidence demonstrates more than a mere temporal relationship between the two injuries. Rather, two expert medical doctors explicitly acknowledged a causal relationship between the two injuries based not only on the temporal onset of the left shoulder injury, but also on the nature of the injury and the general pathology of such injuries in similar circumstances. The superior court's causation conclusion was amply supported by the record. As for employer's objection to the court's reliance on the physical therapist's testimony that injuries to one side of the body often result in injuries to the other side of the body due to overcompensation, Dr. Nichols offered a similar opinion, upon which the court relied. We find no reversible error, if any error at all, in the court relying upon the therapist's testimony.

¶ 11. Next, employer argues that the superior court erred in concluding that claimant had not reached a medical end result by July 2005. Again, we conclude that the record supports the court's conclusion. "The proper test to determine medical end result is whether the treatment contemplated at the time it was given was reasonably expected to bring about significant medical improvement." *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 468 (1996). Continued treatment, such as physical or drug therapy, "does not preclude a finding of medical end result if the underlying condition . . . has become stable and if further

treatment will not improve that condition." *Id.* According to employer, in this case, as of June 2005, Dr. Nichols had nothing to offer claimant but pain management treatment for temporary relief from injuries that were not likely to be remedied further in any significant way.

¶ 12. The record does not support employer's contention. Dr. Nichols testified that in the spring of 2005, shortly after claimant had a second surgery on her right shoulder, she declined to have surgery on her left shoulder. Dr. Nichols stated that claimant declined surgery "at that point" because she "was concerned that her right shoulder wouldn't be able to handle . . . the increased level of activity." According to Dr. Nichols, he anticipated that claimant would be at a medical end result with respect to her right shoulder injury by July 2005, at which time he would "perform a permanency evaluation . . . and also discuss the possible medical end for her left shoulder, as well." Dr. Nichols further testified that although there was nothing more for *him* to do if claimant did not want further surgery, he referred her to a clinic for rehabilitation and pain management to determine whether it "might improve her ability to function." Dr. Nichols opined that a 10% increase in range of motion in claimant's right shoulder would be functionally significant and that a 20% gain "would be a vast improvement functionally."

¶ 13. Dr. Lefkoe, to whom claimant was referred, testified unequivocally that claimant was not at a medical end result when he first met her in July 2005. He "thought that she had the potential [with therapy and treatment] to improve her overall function, whether that be daily activities, potentially vocational activities as well." Dr. Lefkoe also testified that claimant's range of motion in both shoulders improved significantly after July 2005, when he first began treating her, and that she was able to engage more fully in various activities and tasks. Dr. Lefkoe found claimant to have reached a medical end result with her right shoulder as of March 2007. Based on this expert testimony, and claimant's testimony that by the time of the hearing she was able to work much longer hours than in the summer of 2005, the superior court concluded that claimant had not reached a medical end result as of July 2005. This conclusion is amply supported by the record cited above.

¶ 14. The employer nonetheless challenges the superior court's statement that claimant's left shoulder was not at a medical end result because surgery could still improve it. Noting that claimant had refused surgery on her left shoulder as late as July 2005, employer argues that a claimant cannot avoid a finding of medical end result by postponing surgery indefinitely. We find this argument unavailing. First, the record demonstrates that, even in the absence of surgery, claimant made significant improvement in the range of motion of both shoulders after July 2005. Second, the record reveals that claimant reasonably declined to have surgery on her left shoulder during the six-month period following the surgery on her right shoulder.

¶ 15. Finally, employer briefly argues that the issue of whether claimant had reached a medical end result with respect to her left shoulder was not properly before the superior court because the Commissioner did not decide that issue in the first instance, given its determination that that injury was not work-related. Although the Commissioner actually ruled that claimant had reached a medical end result, employer reasons that because the Commissioner ruled that the left shoulder injury was noncompensable, her later conclusion that claimant had reached a medical end result did not take into account that injury. Thus, according to employer, claimant "has failed to exhaust her administrative remedies, thus

depriving the superior court or this court of jurisdiction." We conclude that this argument was not properly preserved. Employer fully litigated — both before the Commissioner and again in the de novo hearing before the superior court — the issue of whether claimant had reached a medical end result with respect to her left shoulder injury. Indeed, in its proposed findings submitted to the superior court following the evidentiary hearing, employer included several paragraphs setting forth its position that claimant had reached a medical end result as of July 2005 with respect to her left shoulder. Employer may not now claim for the first time on appeal that the superior court had no authority to resolve the issue. See *O'Brien Bros.' P'ship v. Plociennik*, 2007 VT 105, ¶ 26, 182 Vt. 409, 940 A.2d 692 (stating that issues not raised before trial court will not be considered on appeal).

¶ 16. Although employer uses the phrases "failed to exhaust administrative remedies" and "lack of jurisdiction" in making this argument, plainly the superior court had general subject matter jurisdiction over the type of issue in dispute here. *Lamell Lumber Corp. v. Newstress Int'l, Inc.*, 2007 VT 83, ¶ 6, 182 Vt. 282, 938 A.2d 1215 (" 'Subject matter jurisdiction' refers to the power of a court to hear and determine a general class or category of cases."). Moreover, this is not a situation in which the claimant failed to adjudicate the case in the proper statutorily designated administrative tribunal before proceeding to the superior court. Rather, employer argues only that the Commissioner had to decide in the first instance a particular issue raised in both the administrative tribunal and the superior court. Employer has waived this argument by failing to raise it before the superior court. See *In re Estate of Cartmell*, 120 Vt. 234, 240, 138 A.2d 592, 595 (1958) ("If a court has jurisdiction of the subject matter, the parties by their conduct may waive all other jurisdictional requirements."); cf. *In re B.C.*, 169 Vt. 1, 8, 726 A.2d 45, 50 (1999) (voiding prior judgments based on unpreserved arguments "would permit litigants to contest the merits of a controversy in a convenient forum while reserving the 'jurisdictional card' in the event of an unfavorable decision"); *Passion v. Dep't of Social & Rehab. Servs.*, 166 Vt. 596, 599, 689 A.2d 459, 463 (1997) (mem.) ("We have noted that requiring preservation of jurisdictional issues in an administrative proceeding is common in American law and an exception to the general rule allowing challenges to subject-matter jurisdiction at any time."); *In re Denio*, 158 Vt. 230, 234, 608 A.2d 1166, 1168-69 (1992) (applying law of exhaustion of administrative remedies in requiring preservation of jurisdictional issues in administrative forums).

*Affirmed.*