NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 122

No. 2017-437

| | |
|---|---|
| Donald L. Sweet, Jr. and Preston L. Sweet | Supreme Court |
| v. | On Appeal from<br>Superior Court, Franklin Unit,<br>Civil Division |
| Roy A. St. Pierre and Catherine St. Pierre<br>d/b/a Woodlands Farms | |
| | September Term, 2018 |

Martin A. Maley, J.

Steven J. Watson of Brooks & Watson, PLC, St. Albans, for Plaintiffs-Appellants/
  Cross-Appellees.

Matt Glitman and Timothy G. Hurlbut, P.C., St. Albans, for Defendants-Appellees/
  Cross-Appellants.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **CARROLL, J.** Plaintiffs appeal the trial court's judgment in favor of defendants on plaintiffs' claim for unpaid wages under the Prompt Pay Act (PPA). Plaintiffs argue that the trial court erred in concluding that no contract existed between the parties as required to support a PPA claim. Defendants cross-appeal, arguing that the court should have awarded them attorney's fees because they were the substantially prevailing party and erroneously excluded evidence relevant to their assault claim. We affirm the trial court's decision on the merits, but reverse and remand for it to award reasonable attorney's fees to defendants.

¶ 2. Plaintiffs Donald and Preston Sweet, who are father and son, sued defendants Roy and Catherine St. Pierre in June 2014 alleging that defendants failed to pay them wages for their

work improving a stand of maple trees on defendants' land for maple sugaring (the "sugar bush"). They alleged claims of unjust enrichment and violation of the PPA, 9 V.S.A. §§ 4001-4009. Defendants counterclaimed for fraud, breach of contract, conversion, unjust enrichment, consumer fraud, and assault. Plaintiffs voluntarily dismissed their unjust enrichment claim prior to trial.

¶ 3. Based on the evidence presented at the September 2017 bench trial, the court found the following facts. In June 2012, defendants advertised a Jeep for sale. Donald Sweet's partner, Emma Wagner, went to defendants' residence and discussed purchasing the vehicle with defendants. The conversation turned to defendants' land and sugaring operation. Roy St. Pierre told Wagner that he was hoping to improve the sugaring operation and increase the number of taps. However, significant work to the trees and lines was needed, and the pump house and boiler also needed repairs. Defendants told Wagner that they did not have the money to pay for the labor necessary to operate the sugaring business. Wagner stated that she had experience working on boilers and would be willing to work on the boiler in exchange for the Jeep. She also suggested that plaintiffs might be available to work on the sugar bush.

¶ 4. Plaintiffs met with defendants at least three times to discuss working on the sugaring operation. The first meeting focused on the work to be done. Plaintiffs testified that they agreed to begin by clearing brush and replacing lines. At the second meeting, the parties discussed compensation. Defendants proposed a form of partnership in which plaintiffs would receive a percentage of profits. Catherine St. Pierre wanted plaintiffs to work thirty hours per week. The court found that this requirement was meant to assure completion of the project within a certain time frame and was not related to compensation.

¶ 5. Catherine St. Pierre prepared and submitted several written contracts to plaintiffs, none of which were ever signed. The later versions were prepared in consultation with a lawyer representing the Vermont Economic Development Authority (VEDA), from whom defendants had obtained a loan of about $30,000 to purchase sugaring equipment. Defendants did not inform

2

plaintiffs that they were in default on the VEDA loan. Each of the contracts provided for plaintiffs to be compensated with a share of profits, rather than wages.

¶ 6. The court found that during one of the parties' discussions, Roy St. Pierre agreed that plaintiffs' work was worth $20 per hour. Plaintiffs understood this to mean that they would be paid either by a share of profits or by an hourly wage. However, the court found that Roy St. Pierre did not agree or promise that plaintiffs would be paid an hourly wage. Rather, defendants anticipated that plaintiffs would receive a share of the profits after payment of certain expenses, which were yet to be determined.

¶ 7. Plaintiffs and Emma Wagner began working on defendants' property without a written contract. Plaintiffs kept track of the hours they worked, although they did not inform defendants they were doing so. Defendants soon became frustrated with plaintiffs' work. Roy St. Pierre believed that plaintiffs did not know how to operate chainsaws, were improperly cutting the brush surrounding the sugar maples, and spent too much time cutting firewood, which the parties had agreed plaintiffs would receive as part of their compensation. However, he never communicated these frustrations to plaintiffs. For their part, plaintiffs began to realize they might not be paid. As the sugaring season neared, the sugar bush was not operational.

¶ 8. In February 2013, Roy St. Pierre was hospitalized after apparently suffering a stroke. Catherine asked plaintiffs to leave the property. Plaintiffs later returned to remove the Jeep with defendants' permission. In March 2013, plaintiffs sent defendants invoices totaling over $58,000, reflecting the hours they allegedly worked on the property. Defendants acknowledged receipt of the invoices and stated they would contact plaintiffs at the end of the season. Plaintiffs sent another billing statement in May 2013. Defendants responded by having plaintiffs served with a no-trespass notice. Defendants grossed approximately $10,000 for the syrup they produced during the 2013 season, which did not account for any expenses related to preparing the sugar bush, including wages paid to another person for labor.

¶ 9. The trial court concluded that the parties never formed a written or oral contract because they never agreed upon the material term of compensation. It also ruled that plaintiffs did not enter into an enforceable oral agreement to negotiate the undecided terms in good faith. Because there was no contract to begin with, the court rejected plaintiffs' argument that the contract was modified to provide that plaintiffs would be paid an hourly wage. The court determined that the lack of a contract also meant that the PPA was inapplicable. Turning to defendants' counterclaims, the court found that defendants failed to prove that Preston Sweet assaulted Roy St. Pierre by threatening to stab him with a screwdriver. It concluded that the statement was a joke and could not reasonably be found to have caused the psychological and physical injuries alleged by defendants in the absence of expert testimony. Likewise, it found their counterclaims for fraud, conversion, unjust enrichment, and consumer fraud to be without merit. It concluded that neither side had substantially prevailed on its claims, and it therefore declined to award attorney's fees under 9 V.S.A. § 4007(c). This appeal followed.

¶ 10. In reviewing the court's decision, we will uphold its factual findings unless they are clearly erroneous. Abbiati v. Buttura & Sons, Inc., 161 Vt. 314, 318, 639 A.2d 988, 990 (1994). Likewise, we will affirm its legal conclusions if they are supported by the findings. Town of Rutland v. City of Rutland, 170 Vt. 87, 90, 743 A.2d 585, 587 (1999).

I.

¶ 11. On appeal, plaintiffs claim that the court erred in finding that there was no meeting of the minds sufficient to form a contract. The existence of a contract is a question of fact for the trier to decide. Town of Rutland, 170 Vt. at 90, 743 A.2d at 587. "[W]hether a contract existed depends on facts as well as the reasonable inferences to be drawn from them, and is also influenced by the situation of the parties and the subject matter." Id.

¶ 12. An enforceable contract requires "a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other." Starr Farm Beach Campowners Ass'n

4

v. Boylan, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002) (mem.). A valid offer is one that is intended "to create a legally binding relationship on acceptance." Id. To constitute a meeting of the minds, the acceptance "must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points . . . and, in the absence of such an acceptance, subsequent words or acts of the parties cannot create a contract." Id. (quotation and alteration omitted).

¶ 13. The record supports the court's finding that there was no meeting of the minds because the parties never reached agreement on a key term, namely, the form of compensation. See Catamount Slate Prods., Inc. v. Sheldon, 2003 VT 112, ¶ 14, 176 Vt. 158, 845 A.2d 324 (explaining that trial court's "findings will stand if there is any reasonable and credible evidence to support them"). As the court explained, plaintiffs believed that they would be paid either a share of the profits or $20 per hour. However, defendants understood the arrangement differently. They believed the project was a joint venture in which plaintiffs would be paid a percentage of the profits after expenses. All of the draft contracts prepared by defendants provided for plaintiffs to be compensated with a share of profits. Defendants told plaintiffs that they had no money to pay them, and thus plaintiffs would only be paid if the sugaring operation turned a profit. They denied that they ever discussed paying plaintiffs an hourly wage. The trial court credited defendants' testimony. Plaintiffs argue that the court should have drawn different inferences from the above facts. However, it is not the role of this Court to reweigh the evidence or assess the credibility of witnesses; such decisions are left to the trial court as the trier of fact. Mullin v. Phelps, 162 Vt. 250, 261, 647 A.2d 714, 720 (1994). We therefore will not disturb the court's finding.

¶ 14. Plaintiffs argue, however, that an agreement on the amount or rate of pay is not essential to the formation of a contract, citing Batchelder v. Mantak, 136 Vt. 456, 392 A.2d 945 (1978). In that case, landowners hired a surveyor to conduct a survey of their properties. The surveyor completed the work and billed the landowners, who refused to pay the full amount. The

trial court entered judgment against the landowners for the unpaid balances due under the invoices. The landowners argued on appeal that no contract was formed. We disagreed, explaining that there was sufficient testimony to prove that an express oral contract for the surveyor's services existed. We held that although the contract did not state how much plaintiff was to be paid, "this is not essential to the formation of a contract. When a contract for services is silent as to the amount to be paid for those services, the law will imply a reasonable compensation." Id. at 465, 392 A.2d at 950.

¶ 15. Batchelder is distinguishable because the dispute in that case was over the rate to be paid a provider under a simple services contract, and the only missing term from the contract was the amount or rate of pay. Here, the alleged contract was not just silent about the amount or rate of compensation; the parties fundamentally disagreed over the form of the compensation and, therefore, the nature of their business relationship. They never reached a clear understanding regarding whether plaintiffs were to be paid a share of the profits, making it a joint venture arrangement under which plaintiffs took on a certain amount of risk, or an hourly wage, making it an ordinary services contract. Under these circumstances, compensation was a material term without which the agreement was unenforceable. See Miller v. Flegenheimer, 2016 VT 125, ¶ 21, 203 Vt. 620, 161 A.3d 524 ("While it is true that not all terms of a contract need to be fixed with absolute certainty, it is also true that an agreement in which a material term is left for future negotiations, is unenforceable." (quotation omitted)); Quenneville v. Buttolph, 2003 VT 82, ¶ 14, 175 Vt. 444, 833 A.2d 1263 (affirming trial court's conclusion that no contract formed where parties never agreed upon terms of financing, which was material term of proposed contract because seller was to finance one-third of purchase price).

¶ 16. Plaintiffs also claim that the court should have found that the parties intended to be bound by an oral agreement to share profits because they worked together for several months. In

Catamount Slate Products, Inc. v Sheldon, we outlined four relevant factors for a court to consider in determining whether parties intend to be bound in the absence of a written agreement:

> (1) [W]hether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

2003 VT 112, ¶ 17. "Intent to be bound is a question of fact." Id. Here, the court found that in addition to partially performing, the parties did not expressly reserve the right not to be bound absent a writing. However, it also found that the parties had not agreed upon all material terms and that they plainly anticipated a written contract. The court further found—and plaintiffs concede—that the type of contract proposed was one that ordinarily would be reduced to writing, due to the VEDA loans and the anticipated net-profit arrangement. It concluded based on these factors that the parties did not intend to be bound absent a fully executed document. The court's findings are supported by the record, and in turn support its conclusion.

¶ 17. Because there was no contract between the parties, the trial court correctly ruled that plaintiffs failed to state a claim under the PPA. The purpose of the PPA is to "to provide protection against nonpayment to contractors and subcontractors." The Elec. Man, Inc. v. Charos, 2006 VT 16, ¶ 12, 179 Vt. 351, 895 A.2d 193. The existence of a valid contract is a necessary prerequisite to a claim under the PPA. See 9 V.S.A. § 4002(a) ("The owner shall pay the contractor strictly in accordance with the terms of the construction contract."); see also id. § 4001(1), (5) (defining construction contract as "any agreement, whether written or oral, to perform work on any real property located within the State of Vermont," and contractor as "a person or entity which contracts with an owner" to perform such work); Trombly Plumbing & Heating v. Quinn, 2011 VT 70, ¶¶ 5, 9, 190 Vt. 552, 25 A.3d 565 (mem.) (holding contractor made out prima facie case under PPA by introducing evidence of contract, work completed, and homeowners' failure to pay

final invoice). Thus, plaintiffs' claims that (1) they established the amount defendants owed by sending invoices at the end of the work pursuant to 9 V.S.A. § 4002(b); (2) by failing to timely dispute the invoices, defendants waived any objection to paying them an hourly wage under 9 V.S.A. § 4004; and (3) defendants were not entitled to withhold payment because they failed to establish a good faith counterclaim under 9 V.S.A. § 4007(b), are of no avail. Those provisions of the PPA are inapplicable because no valid oral or written contract existed between the parties.

¶ 18. Plaintiffs contend that even if no actual agreement was formed, a contract was implied in law because they provided a valuable service to defendants with defendants' knowledge and consent. A contract implied in law, or a "quasi-contract," is "based on an implied promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." DJ Painting, Inc. v. Baraw Enters., 172 Vt. 239, 242, 776 A.2d 413, 417 (2001). Liability in such cases arises from the doctrine of unjust enrichment. Morse v. Kenney, 87 Vt. 445, 449, 89 A. 865, 867 (1914) ("A quasi or implied contract is one where liability exists from implication of law arising from facts and circumstances, independent of agreement or presumed intention, based on the doctrine of unjust enrichment; the implied agreement being one defining the duty of the defendant rather than his intention." (quotation omitted)). Plaintiffs concede that they did not raise this argument before the trial court. In fact, they voluntarily dismissed their unjust enrichment claim against defendants prior to trial. They have therefore failed to preserve this claim for our review. See R & G Props., Inc. v. Column Fin., Inc., 2008 VT 113, ¶ 48, 184 Vt. 494, 968 A.2d 286 ("This Court will not consider matters raised for the first time on appeal.").

II.

¶ 19. The trial court rejected both parties' requests for attorney's fees, stating without elaboration, or findings on the issue, that neither side had substantially prevailed. Defendants

8

challenge this conclusion in their cross-appeal.[1]  We agree that the trial court exceeded its discretion in denying defendants' request, and reverse and remand for the court to award reasonable attorney's fees.

¶ 20.    Vermont follows the so-called American Rule, which requires each party to bear its own attorney's fees unless an applicable statute or contract provides otherwise.  DJ Painting, 172 Vt. at 246, 776 A.2d at 419.  The PPA contains an exception to this rule, stating that "the substantially prevailing party in any proceeding to recover any payment within the scope of this chapter shall be awarded reasonable attorney's fees in an amount to be determined by the court or arbitrator, together with expenses."  9 V.S.A. § 4007(c).  "[I]f a party has substantially prevailed as specified in the statute, an award of attorneys' fees is mandatory."  The Elec. Man, Inc., 2006 VT 16, ¶ 6.  However, the determination of whether any party substantially prevailed is a matter within the trial court's discretion "and cannot be reduced to merely calculating the net verdict." Fletcher Hill, Inc. v. Crosbie, 2005 VT 1, ¶ 15, 178 Vt. 77, 872 A.2d 292; see also Birchwood Land Co. v. Ormond Bushey & Sons, Inc., 2013 VT 60, ¶ 36, 194 Vt. 478, 82 A.3d 539 ("[W]hether a party substantially prevailed is not a mathematical calculation based on the number of claims won or the amount of money awarded.").  Instead, the trial court should apply "a more flexible and reasoned approach focused on determining which side achieved a comparative victory on the issues actually litigated or the greater award proportionally to what was actually sought." Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp., 2010 VT 55, ¶ 8, 188 Vt. 583, 6 A.3d 38 (quotation omitted).

¶ 21.    We first note that it was appropriate for the trial court to consider the parties' requests for attorney's fees under the PPA even though plaintiffs failed to establish the existence

---

[1]  Plaintiffs also seek reversal of the denial of attorney's fees to them.  This argument is supplemental to the merits of their PPA claim.  Because they did not prevail on that claim, they are not entitled to attorney's fees.  9 V.S.A. § 4007(c).

of a contract. Plaintiffs' complaint sought "to recover payment within the scope" of the PPA, and therefore attorney's fees were available to the substantially prevailing party under 9 V.S.A. § 4007(c).

¶ 22. However, the court acted outside of its discretion in declining to award attorney's fees to defendants in this case. Defendants clearly prevailed on the PPA claim. Although the net verdict was zero, defendants achieved a total victory on the PPA claim and the court should have awarded them attorney's fees.

¶ 23. We agree with plaintiffs that some of defendants' counterclaims, such as their claim for assault, clearly did not share a common core of facts with the PPA claim. On remand, the court "must consider and determine which claims do, in fact, arise from a common core of facts insofar as the evidence relevant to those claims is the same."[2] Nystrom v. Hafford, 2012 VT 60, ¶ 24, 192 Vt. 300, 59 A.3d 736. The court shall award defendants the reasonable attorney's fees incurred in litigating the PPA claim as well as any counterclaims that are based on the same core set of facts as that claim. Id.

### III.

¶ 24. Finally, defendants argue that the trial court erroneously excluded evidence related to their assault counterclaim and erred in concluding that they failed to prove any injury.

---

[2] Our direction to the trial court should not be viewed as modifying the holding in The Electric Man, Inc., 2006 VT 16, ¶ 10. In that case, a contractor prevailed on his claims for breach of contract, unjust enrichment, conversion, and violation of the PPA, and on the homeowners' claims for defective workmanship, but the trial court only awarded him the portion of the fees associated with the violation of the PPA. We reversed, holding that because the claims shared "a common core of facts and multiple theories of recovery" and "[v]irtually all of the evidence [was] relevant to all of the claims," the lawsuit could not "be viewed as a series of discrete claims," and the court abused its discretion in apportioning the fee award based on the damages associated with each claim. Id. (quotation omitted). We explained that allowing full recovery of attorney's fees where the claims shared the same facts was consistent with the language and purpose of § 4007(c). Id. ¶¶ 11-12. This case is distinguishable from Electric Man because here, some of defendants' counterclaims were completely unrelated to the PPA claim and relied on different facts. Thus, it is appropriate to separate out the fees incurred in pursuing those claims. Nystrom, 2012 VT 60, ¶¶ 22-25.

Defendants alleged that Preston Sweet threatened to stab Roy St. Pierre in the eye with a screwdriver, causing him significant physical ailments and severe emotional distress. Prior to trial, plaintiffs moved to exclude any evidence, such as medical records or testimony, that Roy St. Pierre suffered a stroke or any other medical or psychological injury as a result of the alleged assault. The court granted the motion, ruling that proof that the alleged assault caused Roy St. Pierre's medical condition required expert medical testimony. The court ultimately concluded based on the evidence presented at trial that the "threat" was a joke and that no assault took place.

¶ 25. "Trial courts have great latitude in decisions to admit or exclude evidence, and such decisions will not be reversed absent an abuse of discretion resulting in prejudice." Gilman v. Towmotor Corp., 160 Vt. 116, 122, 621 A.2d 1260, 1263 (1992). We see no abuse of discretion here. The medical records were hearsay. V.R.E. 801. Even if they were theoretically admissible under the exception for business records, plaintiffs did not disclose or call any witness who could lay the proper foundation for their admission. See V.R.E. 803(6) (providing that business records must come into evidence through testimony of custodian or other qualified witness). Furthermore, to the extent that the medical records contained statements about the inception or cause of defendant's alleged symptoms, such statements would not be admissible under V.R.E. 803(4). See State v. Recor, 150 Vt. 40, 47, 549 A.2d 1382, 1387 (1988) ("[U]nder V.R.E. 803(4)—unlike the corresponding federal rule—statements relating to the inception or cause of a condition or symptom are not admissible even if pertinent to diagnosis or treatment.").

¶ 26. The trial court also acted within its discretion in excluding any testimony from lay witnesses that Roy St. Pierre's stroke or other symptoms were caused by the alleged assault. As the trial court correctly noted, expert testimony is ordinarily required to prove medical causation. Brace v. Vergennes Auto, Inc., 2009 VT 49, ¶ 9, 186 Vt. 542, 978 A.2d 441 (mem.); Wilkins v. Lamoille Cty. Mental Health Servs., Inc., 2005 VT 121, ¶ 16, 179 Vt. 107, 889 A.2d 245. Defendants have not shown that "the facts to be proved are such that any layman of average

11

intelligence would know from his own knowledge and experience that the [alleged assault] was the cause of the injury," rendering expert testimony unnecessary. Egbert v. Book Press, 144 Vt. 367, 369, 477 A.2d 968, 969 (1984) (per curiam). We accordingly see no reason to disturb the evidentiary decision below.

¶ 27. To the extent defendants argue that damages associated with emotional distress and embarrassment are recoverable in assault claims even in the absence of physical harm, there is no basis for such damages in this case. The trial court expressly ruled that plaintiff did not assault Roy St. Pierre at all. In particular, the court found that "Preston Sweet did not threaten Mr. St. Pierre, nor did he direct any action or words toward Mr. St. Pierre which could reasonably be construed as offensive so as to cause emotional distress." The evidence presented at trial supported the court's conclusion that the alleged threat was an "innocuous statement." Having failed to prove that an assault took place, defendants were not entitled to recover damages for emotional distress or otherwise.

The trial court's decision is affirmed as to the merits, but reversed and remanded for the court to award attorney's fees consistent with this opinion.

FOR THE COURT:

_____
Associate Justice