2010 VT 99

**Joanna McNALLY v. DEPARTMENT OF PATH**

[13 A.3d 656]

No. 09-450

¶ 1. October 28, 2010. Claimant Joanna McNally appeals a decision by the Commissioner of Labor after a contested hearing denying her workers' compensation benefits. She argues the Commissioner erred as a matter of law by not applying internal Department of Labor case law to determine whether claimant's injury was the result of a normal activity of daily living. Because the Commissioner's decision fails to make necessary findings or conclusions, we remand for further proceedings.

¶ 2. The material facts are uncontested. Claimant worked for employer State of Vermont for sixteen years in various administrative roles and spent the last three years as a Benefits Program Specialist, processing applications and determining eligibility for state-funded health care programs. As a Program Specialist she spent ninety-five percent of her day at her computer typing and performing data entry — much more constant and intense typing than she had done in previous positions. Shortly after beginning her work in this capacity, her hands began to feel tired toward the end of her work week. She informed a co-worker and a wellness nurse about her pain, and both suggested she get an ergonomic assessment of her workstation, which she requested in April 2007. In May 2007, following the assessment, employer recommended she receive an ergonomic keyboard and adjusted the height of her chair to relieve stress on her shoulders and wrists. Despite these changes, claimant continued to experience fatigue and pain in her hands. She chose to treat it with over-the-counter anti-inflammatory pain medication and would occasionally take Fridays off to rest her hands. Between August 2007 and February 2008, claimant visited her primary care physician five times, four of which were to complain of acute problems and the fifth for an annual exam — she never mentioned her tired and achy hands.

¶ 3. One day in mid-February 2008, claimant spent an hour and a half helping her husband and son shovel snow off the roof of their home. The next morning claimant's hands were swollen and painful, something that had never happened before, and she immediately sought treatment from her doctor. He diagnosed her with bilateral enthesopathy, or damage to the tendons of her wrist, carpus, and elbows, and attributed it to overuse caused by her work. He recommended she reduce her work hours and continue to take anti-inflammatory pain medication. After six months of treatment and reduced work, claimant was back to the pain level she had experienced before the snow-shoveling incident. She returned to work full-time, and employer made additional ergonomic changes to her workstation and altered her job responsibilities to decrease the amount of typing she was required to do.

¶ 4. Claimant filed for workers' compensation, claiming benefits associated with her medical treatment and disability following the snow-shoveling incident. At the hearing, claimant's doctor testified that her typing was the primary cause of her injury, even though the shoveling ultimately led her to seek medical treatment. He testified that her shoveling was not significant enough to produce the

level of injury she suffered without a more chronic underlying dysfunction. Another doctor, also testifying on complainant's behalf, agreed, though he diagnosed her injury as tendonitis. Employer's medical expert thought that claimant was suffering from enthesopathy, but he did not believe that her work activity — primarily typing — could have caused the injury to her wrists and elbows because such work involves the fingers, not the hands or forearms.

¶ 5. Merely reciting the expert testimony offered, without making any findings, the Commissioner denied claimant benefits, concluding that though "[c]laimant most likely suffered from a chronic underlying condition even before the February 2008 snow shoveling incident," in the end "it was a non-work-related event that first compelled [her] to seek treatment for her symptoms [and] . . . by the time the treatment at issue concluded she was back to whatever baseline symptoms she had experienced before [the incident]." In conclusion, the Commissioner denied compensation, noting that claimant's "baseline condition [may be] in fact work related . . . [and could] well be compensable," but "[h]er current claim . . . [was] for benefits that clearly [we]re attributable to her non-work-related aggravation." Claimant appealed.

¶ 6. The Commissioner certified one question for this Court's review: "Is Claimant's bilateral enthesopathy of the wrist, carpus and elbow compensable under Vermont's Workers' Compensation Act?" See 21 V.S.A. § 672 (requiring certified question for Supreme Court review). On appeal, claimant contends that in ruling the snow-shoveling incident was nonwork-related, the Commissioner erred as a matter of law by failing to determine whether the snow shoveling was a normal activity of daily living.[1] Claimant argues that before concluding that an intervening cause led to her injury, the Commissioner must first determine whether the intervening cause was a normal activity of daily living. In support of this position, claimant relies on a previous Department decision, cited in the Commissioner's decision below, where lifting a ladder was ruled an intervening event that broke the causal chain and supported denial of benefits because the associated roofing work was not a normal activity of daily living. See *Fleury v Legion Ins.*, No. 43-02WC, Discussion ¶ 4 (Nov. 15, 2002), available at http://www.labor.vermont.gov/Default.aspx?tabid=917 ("This Department has held that a normal activity of daily living does not constitute an intervening nonindustrial cause sufficient to break the causal chain from a work-related injury because everyone, including an injured person, necessarily performs such activities."). The present case presents two challenges on appeal. The first is the absence of findings supporting the Commissioner's conclusions, and the second is the Commissioner's unclear application of the law.

¶ 7. Our review of workers' compensation claims is well settled. We are extremely deferential to the Commissioner's factual findings, requiring only a scintilla of evidence to rationally support the result reached. *Kapusta v. Dep't of Health/Risk Mgmt.*, 2009 VT 81, ¶ 17, 186 Vt. 276, 980 A.2d 236 ("[W]e will overrule only when [the Commissioner's] findings have no evidentiary support in the record or where the evidence is so slight that it is an irrational basis for the result

---

[1] We need not reach claimant's additional arguments given our resolution of this threshold issue.

reached."). So long as the Commissioner's conclusions are supported by these findings and reflect the correct interpretation of the law, we will affirm the decision. *Morin v. Essex Optical/The Hartford*, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729. We defer to the Commissioner's construction of the workers' compensation statute "absent a compelling indication of error." *Cyr v. McDermott's, Inc.*, 2010 VT 19, ¶ 14, 187 Vt. 392, 996 A.2d 709 (quotation omitted).

¶ 8. This benefits claim boiled down to two simple questions: Was the shoveling incident the sole cause of claimant's injury or did it exacerbate a preexisting, work-related condition? At the contested hearing, three medical experts testified on this question. Claimant's experts supported her position that her disability was a result of her earlier hand pain. Employer's expert reached a contrary conclusion. In her decision, however, the Commissioner failed to make any findings with regard to the evidence presented by the medical experts. Instead, she merely recited the essence of their testimony, couched in terms like "according to" or "in [his] opinion." We have long held that a "recitation of evidence in findings is not a finding of the facts," *Krupp v. Krupp*, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967), and thus cannot support a legal conclusion. Even were we to look to the language of the Commissioner's legal conclusions in order to understand what she found as fact, they offer little additional insight. See *In re E.C.*, 2010 VT 50, ¶ 15, 188 Vt. 546, 1 A.3d 1007 (mem.) (noting that locating factual findings in a different section of legal decision is "not a fatal defect"). Though in the "Conclusions of Law" portion of the decision the Commissioner provides her standard test for determining which expert's opinion is the most persuasive, she does not appear to apply that test. Indeed, her ultimate conclusion ignores any medical testimony and rests solely on nonmedical facts re-

lating to claimant's reported pain levels. To the extent she seems to rely at all upon the medical experts' opinions it is to note that "[c]laimant most likely suffered from a chronic underlying condition."

¶ 9. Recognizing, however, that we must construe the findings to support the judgment below, if possible, see *LaFountain v. Vt. Emp't Sec. Bd.*, 133 Vt. 42, 46, 330 A.2d 468, 471 (1974), we look past this inconsistency and determine that the Commissioner could have decided against claimant only had she credited employer's expert and found claimant's injury to be wholly separate from her underlying condition. In analyzing this conclusion, we conclude the Commissioner erred in her application of the law.

¶ 10. In executing the workers' compensation scheme, we have held that the inquiry must begin with a determination of whether an injury arose out of and in the course of employment. *Cyr*, 2010 VT 19, ¶ 8 ("The principle, and initial, requirement for compensation eligibility is found in 21 V.S.A. § 618, which conditions the payment of compensation to a worker on a finding that the claimed personal injury arose out of *and* in the course of employment."). In performing this fundamental test we also understand that even where a "worker's activity leading to the injury is not work per se, the causal connection is not necessarily broken." *Shaw v. Dutton Berry Farm*, 160 Vt. 594, 598, 632 A.2d 18, 20 (1993). Here, the Commissioner never clearly ruled on this crucial question. Instead, she concluded that claimant initially sought treatment for her symptoms following a nonwork-related event and therefore could not receive compensation for such treatment because the treatment had brought claimant back only to her pre-injury state. At the same time — and somewhat confusingly — the Commissioner also opined that claimant's underlying disability could be compensable and her claim for benefits was "attributable to [an] aggravation" of

that disability. The word "aggravation" is defined under the workers' compensation regulations to mean "an acceleration or exacerbation of a pre-existing condition caused by some intervening event or events." Workers' Compensation and Occupational Disease Rules § 2.1110, 4 Code of Vt. Rules 24 010 003-1, available at http://labor.vermont.gov/?TabId=311. While it is commonly used in cases involving successive-but-related injuries under different employers, see *Pacher v. Fairdale Farms*, 166 Vt. 626, 627-28, 699 A.2d 43, 46 (1997) (mem.) (outlining distinction between "recurrence" and "aggravation" of original injury), here its use is less clear, especially given the fact that claimant at all times was and still is employed by the same employer. It is difficult for this Court to understand how the Commissioner could deny claimant benefits while postulating — and not deciding one way or the other — that claimant did in fact suffer from the aggravation of a work-related injury. Accordingly, we remand this case for a clarification of both the findings and conclusions of law, specifically, whether claimant's hand pain arose out of and in the course of her employment, how it was or was not causally related to her snow shoveling, and, if related, whether the shoveling was a normal activity of daily living.[2]

¶ 11. Finally, we note that claimant's argument that the Commissioner erred in failing to consistently apply the Department's own internally developed case law regarding normal activities of daily living rests on unresolved assumptions. Primarily, it assumes that this Court is or would be governed by the Department's own legal analysis, much of which merely cites to earlier Department cases or to generally phrased legal treatises. Additionally, it assumes that this Court would simply adopt the legal tests and conclusions of the Department without examining their logical and legal bases. Without any citation to this Court's precedent or to the case law of sister jurisdictions, claimant's argument has little persuasive force.

*Reversed and remanded.*

---

[2] We state no opinion on the legal basis or applicability of this standard.