2011 VT 62

### Robin HOULE v. ETHAN ALLEN, INC.

[24 A.3d 586]

No. 10-129

¶ 1. June 14, 2011. Employer appeals from the Commissioner of the Department of Labor's decision that claimant Robin Houle's right shoulder condition was compensable under the Workers' Compensation Act. Employer raises numerous arguments. We affirm.

¶ 2. Following a hearing, the Commissioner found as follows. Claimant began

working at employer's furniture manufacturing factory in 1997. She was initially assigned to the "trim and wax" process, which involved removing drawers from a finished dresser, sanding and waxing them, installing hardware, and then returning the drawers to the dresser. In August 1999, claimant injured her neck and left shoulder while pulling on a drawer to remove it from its dresser. The injury was diagnosed variably as a left elbow, wrist, and/or shoulder strain; tendonitis; or cervical radiculopathy. Claimant reached a medical end result for this injury in December 2000 and received permanent partial disability benefits in accordance with a 9.5% impairment referable to her neck.

¶ 3. Claimant continued to experience pain and weakness in her left shoulder and arm, and her job duties were modified to account for her medical restrictions. Claimant was assigned to an inventory control/stockroom clerk position where she engaged in a variety of duties. Interspersed among these duties, claimant also wrapped finished shelves to prepare them for shipping. Depending on production needs, claimant might wrap as many as 200 to 250 shelves in a day. Until 2007, claimant performed her duties in an enclosed area that was well-suited to her needs and took into account her left shoulder restrictions. In October 2007, however, claimant was reassigned to the "trim and wax" process for as long as two hours per day. Her work station was also changed, and claimant was moved out onto the production floor. This workspace was more cramped and required claimant to engage in more turning and reaching to complete tasks. Claimant testified that the combination of being reassigned to "trim and wax" and moving to a new work station caused increased stress to her left shoulder and required her to use her right arm more to compensate.

¶ 4. In February 2008, claimant was assigned to work on the "sand and seal" line, which involved repetitive motions with both arms and some overhead reaching. Claimant's supervisor assisted her, but even with this assistance, claimant began to feel burning pain in her neck and shoulders after thirty minutes. Claimant remained at this task for approximately ninety minutes and then returned to her other job duties. The following day, claimant reported to a nurse at work that she had significant pain in her neck and left shoulder and that she needed to seek medical treatment. Employer determined that it could no longer accommodate claimant's modified work duty restrictions and, consequently, claimant did not return to work following this incident.

¶ 5. Claimant was initially treated for the increased symptoms in her shoulder and neck by Dr. Latham, her primary care provider. Dr. Latham referred her to Dr. James, an orthopedist, for further evaluation. Dr. James evaluated claimant in May 2008, and he suspected that her left shoulder complaints were most likely due to her repetitive work for employer. He attributed claimant's right shoulder pain to normal wear and tear to be expected of someone claimant's age. Claimant was dissatisfied with this evaluation, and consequently, Dr. Latham referred her to Dr. Chen, an orthopedic surgeon, for further evaluation and treatment.

¶ 6. Dr. Chen evaluated claimant in July 2008. The Commissioner found it notable that, according to Dr. Chen's report, claimant stated that she injured both of her shoulders in August 1999, not just her left shoulder. As to the right shoulder, an August 2008 MRI revealed findings indicative of degenerative changes and also two rotator cuff tears — an inferior labral tear and a "bucket handle" tear of the superior labrum from anterior to posterior (referred to as a SLAP tear). According to Dr. Chen, the combination of claimant's repetitive work for employer and her need to compensate for the pain and weakness in her left

shoulder most likely resulted in a "cumulative dose injury" to her right shoulder.

¶ 7. In reaching his conclusion, Dr. Chen acknowledged that SLAP tears often result from the natural wear and tear of the aging process. In his opinion, however, the tears that claimant appeared to have suffered most commonly were associated with either trauma or repetitive motion, not simply aging. Dr. Chen admitted that he lacked detailed information about the nature of claimant's job duties, particularly the type, extent, and duration of any repetitive activities. He noted, however, that it would be quite common for a person with a long-standing history of symptoms in one shoulder to overcompensate and thereby develop problems in the other shoulder as well. Dr. Latham concurred in Dr. Chen's analysis, but the Commissioner discounted Dr. Latham's opinion, finding that he made erroneous assumptions about the extent to which claimant must have engaged in repetitive heavy lifting based solely on his own understanding of what goes on in a furniture manufacturing plant.

¶ 8. Dr. Wieneke, an orthopedic surgeon, and Dr. Johansson, an osteopath, disagreed with Dr. Chen's analysis. Dr. Wieneke performed a medical records review in April 2009; he also reviewed claimant's deposition, from which he gleaned claimant's specific job duties. Dr. Johansson conducted a similar review, and also performed an independent medical evaluation of claimant in August 2009. These doctors concluded that claimant's right shoulder symptoms most likely were the result of degenerative changes in her joint rather than any rotator cuff tear. As to the latter, Dr. Wieneke asserted that even if such tears existed (which in his opinion had not yet been conclusively determined), the medical literature did not support any causal association whatsoever between the injury and the light duty repetitive work that claimant performed for employer. Dr.

Chen testified, in contrast, that it was well-accepted that certain SLAP tears could be the result of the aging process, but that more significant SLAP tears, such as that at issue here, may not be.

¶ 9. In view of the competing expert medical opinions, the Commissioner relied on a traditional five-part test to evaluate their persuasiveness. This test considers: (1) the nature of treatment and the length of time there has been a patient-provider relationship; (2) whether the expert examined all pertinent records; (3) the clarity, thoroughness, and objective support underlying the opinion; (4) the comprehensiveness of the evaluation; and (5) the qualifications of the experts, including training and experience. The court found both parties' experts deficient in some respects. Dr. Latham and Dr. Chen did not attempt to understand the specifics of claimant's job activities, and thus the Commissioner found their conclusions as to the repetitive nature of claimant's work and its probable impact on her right shoulder somewhat suspect. Employer's experts focused on the light duty nature of claimant's work, but failed to adequately address the extent to which claimant still might have overused her right arm to compensate for the deficits in her left shoulder. The Commissioner found this to be a close case, but she was ultimately persuaded by claimant's credible testimony and by Dr. Chen's status as claimant's treating orthopedic surgeon. The Commissioner reasoned that whether the injury resulted directly from claimant's job activities or from overcompensating for her work-related left shoulder injury, both events were compensable. The Commissioner therefore found in favor of claimant and ordered employer to pay all workers' compensation benefits that claimant proved were causally related to her compensable right shoulder injury. Employer appealed.

¶ 10. Because employer appealed directly to this Court, our jurisdiction is

limited to a review of questions of law certified to this Court by the Commissioner. 21 V.S.A. § 672. The question certified here was "[d]id the Commissioner err in concluding that claimant's right shoulder condition was compensable?" In other words, did the Commissioner correctly conclude that claimant's injury was incurred "by accident arising out of and in the course of employment?" *Id.* § 618 (a)(1) (compensable injuries under Vermont's Workers' Compensation Act are those received "by accident arising out of and in the course of employment"). We defer to the Commissioner's conclusion, and will overrule her decision only if the "findings have no evidentiary support in the record or where the decision is based on evidence so slight as to be an irrational basis for the result reached." *Cehic v. Mack Molding, Inc.*, 2006 VT 12, ¶ 6, 179 Vt. 602, 895 A.2d 167 (mem.) (quotation and citations omitted). If "the Commissioner's conclusions are rationally derived from the findings and based on a correct interpretation of the law, we will affirm." *Id.* (quotation and citation omitted)."

___

* Claimant argues that we lack jurisdiction to consider this appeal because it does not involve a question of law as required by 21 V.S.A. § 672. Certainly, the statutory provisions governing appeals from the Commissioner's decision are not models of clarity, and there is much room for confusion and seemingly overlapping jurisdiction between this Court and the superior court. See, e.g., *Stoll v. Burlington Elec. Dep't*, 2009 VT 61, 186 Vt. 127, 977 A.2d 1282. Nonetheless, we conclude that jurisdiction is present here. As set forth above, our review of the facts is highly limited and "confined to the issue of law relating to the sufficiency of the evidence to support the factual findings." *Peabody v. Jones & Lamson Mach. Co.*, 122 Vt. 431, 433, 176 A.2d 759, 761 (1961). We evaluate any "factual" chal-

¶ 11. Employer first challenges the Commissioner's use of the five-part test to evaluate competing medical opinions, both as applied in this case and in general. According to employer, the use of this test improperly shifts the burden of proof from claimant to employer, unfairly places employers at a disadvantage, and erroneously employs a "winner take all" approach to evaluating a claimant's expert testimony. Claimant did not raise any of these arguments below, however, and thereby waived them. See *Cehic*, 2006 VT 12, ¶ 14 (similarly refusing to consider issue not raised before Commissioner). We reject employer's unsupported assertion that it had no obligation to challenge the use of the test below. One primary purpose of our rules on preservation is to give the factfinder "the opportunity to consider the matter in the first instance." *Id.* No such opportunity was provided to the Commissioner here. To the contrary, employer urged the Commissioner to conclude that its experts were more persuasive under the five-part test. Given this, we decline to address employer's challenge to the test for the first time on appeal.

¶ 12. Assuming the test applies, employer takes issue with the Commissioner's evaluation of the evidence. It maintains that claimant failed to prove that her injury resulted from overuse. Employer suggests that because the Commissioner found deficiencies in the analysis of both parties' experts, the Commissioner was obligated to find in its favor. Employer also asserts that the Commissioner erred in crediting Dr. Chen's testimony because he did not know exactly what claimant's work entailed or what repetitive activities she engaged in at work or at home. Absent such knowledge, employer argues, this claim and all overuse claims must fail. Employer also faults the Com-

___

lenges advanced by employer under this deferential standard.

missioner for failing to explicitly address several components of the five-part test cited above, namely, whether claimant's experts had all pertinent records and whether their evaluations were comprehensive. Employer states that there can be "no doubt" that its experts were more knowledgeable about claimant's activities and medical history than claimant's experts.

¶ 13. Employer fails to show that the Commissioner's findings are clearly erroneous or that her conclusions are unsupported by the findings. As claimant's treating orthopedic surgeon, Dr. Chen testified to his examination of claimant. He understood that claimant had injured her left shoulder in 1999, following which claimant was on limited duty until her workstation was changed and her job duties were modified to include repetitive motions for up to two hours per day. He was aware that she experienced a recurrence of pain as a result. Claimant also testified to her job responsibilities and modified workstation, and the effect that they had on her physical condition. As stated above, claimant's MRI indicated a bucket handle tear in her right shoulder, which was a much more significant tear than typical SLAP tears. A bucket handle tear, Dr. Chen explained, was not something that was simply age-related, but rather, was related to either trauma or repetitive motion. Dr. Chen opined that claimant's injury to her right shoulder was due to overcompensating for the injury to her left shoulder. He reasoned that because claimant's left shoulder injury was work-related and her work duties were subsequently limited due to that injury, and because claimant could not use the left shoulder but had to rely on the right upper extremity instead, it followed that claimant's overuse of her right shoulder was directly and causally related to the prior injury.

¶ 14. The Commissioner found Dr. Chen's opinion persuasive, and she did not err in doing so. Dr. Chen's opinion was based on facts, not speculation, and he offered his opinion to a reasonable degree of medical certainty. *Jackson v True Temper Corp.*, 151 Vt. 592, 595-96, 563 A.2d 621, 622-23 (1989) (explaining that "[o]pinions must be based on facts disclosed by the evidence in the case and not in whole or in part upon speculation of the witness as to what might have been such evidence," and "expert testimony must meet a standard of reasonable probability or a reasonable degree of medical certainty" (quotations and citations omitted)). What employer identifies as shortcomings in Dr. Chen's opinion go to the weight of the evidence, a matter exclusively reserved for the factfinder. See *id.* at 596, 563 A.2d at 623 ("Weaknesses in the basis for the opinion and the precision of the opinion properly go to the weight to be accorded it by the trier of facts."). Dr. Chen did not suggest, moreover, nor did the Commissioner find, that claimant's injury was the result of a progressive, underlying degenerative condition, namely, the osteoarthritis in claimant's right shoulder. Employer's reliance on *Stannard v Stannard Co.* is thus misplaced. 2003 VT 52, ¶ 11, 175 Vt. 549, 830 A.2d 66 (mem.) (stating causation test for progressively degenerative disease such as osteoarthritis).

¶ 15. In reaching her conclusion, the Commissioner reasonably considered claimant's testimony in conjunction with that provided by Dr. Chen — not as a surrogate for medical evidence on causation, as employer asserts — but rather as a factual predicate for Dr. Chen's expert medical opinion. Claimant was certainly in the best position to describe to the Commissioner her daily work responsibilities, and the physical effects that she experienced following changes to her duties and her workstation. While employer believes its evidence was more compelling than that presented by claimant, it fails to show that the Commissioner's decision

was based on evidence "so slight as to be an irrational basis for the result reached." *Cehic*, 2006 VT 12, ¶ 6 (quotations and citation omitted). We thus find no basis to disturb the Commissioner's decision.

¶ 16. None of employer's arguments persuade us otherwise. The fact that Dr. Chen was not intimately familiar with claimant's work schedule was not fatal to claimant's case. As stated above, Dr. Chen knew that claimant's new job responsibilities at times included up to two hours of repetitive motions in a given workday. Additionally, he stated that even if claimant had only engaged in wiping down furniture on one day for an hour and a half, such activity could cause her injury. Employer suggests that Dr. Chen's opinion was unreliable because he, like Dr. Latham, relied on unfounded assumptions. The Commissioner found that Dr. Latham made erroneous assumptions about the extent to which claimant must have engaged in repetitive heavy lifting based on solely his own understanding of what goes on in a furniture manufacturing plant. This finding is supported by Dr. Latham's testimony. Dr. Chen did not base his opinion on any such assumptions, and the Commissioner was well within her discretion in finding Dr. Chen's testimony credible while discounting Dr. Latham's testimony.

¶ 17. We similarly reject employer's assertion that simply because the Commissioner found shortcomings in both parties' expert opinions that claimant cannot prevail. It is evident that, despite these shortcomings, the Commissioner found that Dr. Chen offered a more persuasive opinion on causation than employer — one that was sufficient to establish that claimant's injury was more probably than not incurred "by accident arising out of and in the course of employment." 21 V.S.A. § 618(a)(1). We note that claimant provided the Commissioner with additional information about her job duties, which was one of the shortcomings identified by the Commissioner in Dr. Chen's testimony.

¶ 18. Finally, we reject employer's assertion that the Commissioner erred by not explicitly making findings on all of the factors in the five-part test cited above. There appears to be no legal requirement that the Commissioner make findings on all five factors. Nor is this case like *McNally v. Department of PATH*, cited by employer, where the Commissioner "failed to make any findings with regard to the evidence presented by the medical experts." 2010 VT 99, ¶ 8, 189 Vt. 515, 13 A.3d 656 (mem.). In any event, it is implicit in the Commissioner's decision that she found claimant's expert had considered all pertinent records and that he had done a sufficiently comprehensive evaluation to support a judgment in claimant's favor. See *Moody v. Humphrey & Harding, Inc.*, 127 Vt. 52, 54, 238 A.2d 646, 647-48 (1968) (our review of the Commissioner's factual findings is limited to the issue of law relating to the sufficiency of the evidence to support the findings, and "we must test the sufficiency of the facts from a point of view favorable to the award, if this can reasonably be done"). Essentially, employer challenges the Commissioner's assessment of the weight of the evidence. As we stated in *Cehic*, "it is not our role to weigh the evidence in the record." 2006 VT 12, ¶ 12; see also *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 468 (1996) ("[T]he weight of the evidence is not reviewable by this Court on appeal."). If employer believed that the weight of the evidence preponderated in its favor, it could have sought a new trial on the facts in the superior court. It declined to do so. This Court is "bound by the Commissioner's findings so long as they are supported by the evidence," *Cehic*, 2006 VT 12, ¶ 6, and the findings are supported by the evidence here. We have considered all of employer's arguments, and we find no error.

*Affirmed.*