Brown v. WT Martin Plumbing & Heating, No. 201-5-10 Bncv  (Wesley, J., July 1, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Bennington Unit** | **Docket No.   201-5-10 Bncv** |

**ROBERT BROWN,**
　　　　**Appellant**

**v.**

**WT MARTIN PLUMBING**
**& HEATING**
　　　　**Appellee.**

## OPINION AND ORDER

*Introduction*

On April 16, 2010, the Commissioner of the Department of Labor determined that Appellant Robert Brown was entitled to a permanent partial disability payment based on a 3% whole person disability rating.  Mr. Brown appealed this decision, arguing that his payment should be based on a 46% whole person disability rating. The primary dispute on appeal is whether the diagnosis of a medical condition causing permanent partial impairment must be made in accordance with the American Medical Association Guides to the Evaluation of Permanent Impairment, fifth edition (*AMA Guides 5th*) in order to warrant payment for a permanent partial disability.

*Certified Question and Jurisdiction*

Under the provisions of 21 V.S.A. §§ 670 & 671, the Commissioner has certified the following question for the Superior Court's consideration:

> What is the appropriate permanent impairment rating attributable to Claimant's August 30, 2006 work injury?

The question, as framed by the Commissioner, raises a mixed question of law and fact and therefore jurisdiction is appropriate pursuant to 21 V.S.A. § 671.[1]  The standard of review is *de novo*. *Pitts v. Howe Scale Co.*, 110 Vt. 27 (1938).

---

[1] The Vermont Supreme Court has recognized that "the statutory provisions which govern appeals from the Commissioner's decisions are not models of clarity". *Houle v. Ethan Allen*, 2011 VT 62, ¶10 FN.  Indeed, this case presents an interesting iteration of this jurisdictional quagmire where the commissioner has certified a mixed question of law and fact, but Appellant's presentation has focused almost exclusively on the legal issues addressed below.

*Findings of Fact*

1. At all times relevant to these proceedings, Appellant was an employee and Appellee was his employer as those terms are defined in Vermont's Workers' Compensation Act.

2. Appellant worked as a master plumber for Appellee, a plumbing contractor. On August 30, 2006, he slipped and fell down a flight of stairs at a job site, tearing the rotator cuff in his right shoulder.

3. The rotator cuff was surgically repaired in January of 2007 and Appellant underwent physical therapy. However, his recovery was complicated by adhesive capsulitis as well as symptoms indicative of complex regional pain syndrome ("CRPS").

4. In April of 2007, as treatment for Appellant's adhesive capsulitis, Dr. Nofziger performed a surgical procedure where he manipulated Appellant's shoulder under anesthesia. This procedure resulted in increased shoulder motion, but Appellant's CRPS symptoms persisted.

5. Appellant treated his CRPS symptoms with Dr. Robert Giering, a physiatrist and pain management specialist. In diagnosing Appellant with CRPS, Dr. Giering relied on the International Association for the Study of Pain ("IASP") diagnostic criteria. He also confirmed that the condition was causally related to the August 2006 work accident.

6. The evidence appeared to support the reasonableness and medical necessity of the CRPS treatment, and Appellee did not dispute lost time and medical benefits paid to Appellant for this condition.

7. In June of 2008, Dr. Giering determined that Appellant had reached an end medical result. Because he was not proficient in rating permanency in accordance with the *AMA Guides 5th*, Dr. Giering referred Appellant to Dr. Lefkoe for this purpose.

8. Dr. Lefkoe evaluated Appellant in September of 2008. He accepted Dr. Giering's diagnosis that Appellant suffered from CRPS. Based on this diagnosis of CRPS (made pursuant to the IASP criteria), Dr. Lefkoe used the *AMA Guides 5th* to determine the appropriate impairment rating for patients who suffer from CRPS. He determined that Appellant suffered a 46% whole person permanent impairment as a consequence of his work injury. Of the 46% impairment, 4% was based on range of motion considerations relating specifically to Appellant's shoulder, and the remainder related to CRPS.

9. Despite accepting Dr. Giering's diagnosis, Dr. Lufkoe never independently determined if Appellant satisfied the diagnosis criteria for CRPS set forth in the *AMA Guides 5th*. Based on Dr. Lefkoe's findings, it appears unlikely that Appellant met the criteria for a CRPS diagnosis in accordance with the *AMA Guides 5th*.

10. Appellee's medical expert, Dr. Wieneke, disputed Dr. Lefkoe's methodology and permanency rating. Dr. Wieneke conducted two separate evaluations of Appellant. In

March of 2008 he determined that Appellant had not reached an end medical result, but he nonetheless determined that Appellant's permanent impairment rating was 12% right upper extremity.

11. In May of 2009, Dr. Wieneke determined that Appellant was at an end medical result and that he did not suffer from CRPS as defined by the *AMA Guides 5th* criteria. Dr. Wieneke calculated Appellant's permanent impairment as 3% whole person – 1% for residual limitations in Claimant's right shoulder motion and 2% for generalized right upper extremity pain. The 2% pain impairment rating was based on the maximum rating allowed under the pain chapter of the *AMA Guides 5th*, without consideration of CRPS.

12. While testifying at the merits hearing, Dr. Wieneke was confused about how he had arrived at his permanent impairment rating. At one point he referenced Table 16-10 of the *AMA Guides 5th*, although he later said that was clearly wrong since the table refers to peripheral nerve disorders.

13. Dr. Wieneke's report was only 2 pages long, as compared with the 16 page report of Dr. Lefkoe. Dr. Wienke spent approximately 30 minutes total evaluating Appellant during two examinations, as compared with one hour and a half spent by Dr. Lefkoe during one examination.

*Conclusions of Law*

1. In worker's compensation cases, the claimant has the burden of establishing all facts essential to the rights asserted. *King v. Snide*, 144 Vt. 395, 399 (1984). He or she must establish by sufficient credible evidence the character and extent of the injury as well as the causal connection between the injury and the employment. *Egbert v. The Book Press*, 144 Vt. 367 (1984).

2. The dispute here centers on whether Appellant has a ratable impairment attributable to CRPS. Dr. Lefkoe determined that he does in reliance on the IASP diagnostic criteria. Dr. Wieneke determined that he does not applying the diagnostic criteria in the *AMA Guides 5th*. As described above, the Court finds that Appellant satisfies the IASP diagnostic criteria for CRPS, but does not satisfy the criteria set forth in the *AMA Guides 5th*.[2]

3. On the date of Appellant's work injury (8/30/2006), 21 V.S.A. § 648(b) provided: "Any determination of the existence and degree of permanent partial impairment shall be made in accordance with the most recent edition of the American Medical Association Guides." See 2007, Adj. Sess., No. 208, § 6. At that time, the most recent edition of the American Medical Association Guides to the Evaluation of Permanent Impairment was the fifth edition.[3]

---

[2] The *AMA Guides* are more stringent and require that a patient exhibit 8 of 11 objective signs of the condition to diagnose CRPS, while the IASP requires (1) the patient show one symptom in four categories, and (2) the patient exhibit one sign in at least two categories.
[3] The *AMA Guides* sixth edition was first printed in November of 2007.

4. Following the publication of the *AMA Guides*, sixth edition, the Legislature revised 21 V.S.A. § 648(b) effective July 1, 2008 to read: "Any determination of the existence and degree of permanent partial impairment shall be made only in accordance with the whole person determination as set out in the *fifth edition* of the American Medical Association Guides to the Evaluation of Permanent Impairment…"(emphasis added).

5. Appellant argues that this Court should apply the previous version of § 648(b) as if it were in effect today. Under this theory, the medical experts would need to use the most recent version of the American Medical Association Guides—currently the 6th edition—to determine his permanency rating. This argument is contrary to the plain language of the statute and ignores the clear legislative intent to fix the *AMA Guides 5th* as the authoritative manual on permanency ratings.[4]

6. Both the previous and current versions of 21 V.S.A. § 648(b) indicate that the *AMA Guides 5th* controls both the diagnosis of impairments and the corresponding computation of the permanent impairment rating. Therefore, as a matter of law, in order to qualify for a permanent impairment rating, a condition must be diagnosed in accordance with the *AMA Guides 5th* criteria.[5]

7. Because the diagnosis of CRPS relied on by Dr. Lefkoe was made based on IASP criteria, his ultimate permanency rating, while correctly computed, must be rejected as based on an improperly diagnosed condition. Simply put, Dr. Lefkoe failed to diagnose Appellant with CRPS pursuant to the *AMA Guides 5th* before calculating a permanency rating for that condition. Further, based on the findings of Dr. Lefkoe, it is clear that Appellant could not be diagnosed with CRPS under the *AMA Guides 5th* criteria. Therefore, any permanency rating for pain must be made under the pain chapter of the *AMA Guides 5th*, as explained by Dr. Wieneke.

8. Dr. Lufkoe gave no opinion on this and the Court therefore adopts Dr. Wieneke's recommendation of 2% whole person impairment for pain in accordance with the pain chapter of the *AMA Guides 5th*.

9. With respect to the whole person rating attributable to Appellant's shoulder injury, not including pain, the two experts disagreed. Dr. Lefkoe determined that the appropriate rating for this injury was 4% whole person. Dr. Wieneke found that the appropriate rating would be 1% whole person.

10. When evaluating competing expert medical opinions the court considers (1) the nature of the treatment and the length of time there has been a patient-provider relationship; (2) whether the expert examined all pertinent records; (3) the clarity, thoroughness, and objective support underlying the opinion; (4) the comprehensiveness of the evaluation;

---

[4] Neither expert believed that the 6th edition controlled this case nor discussed the 6th edition in his report.

[5] Appellant cites a Kentucky case, *Tokico v. Kelly*, No. 2007-CA-002342-WC (Ky.App. 2007), for the proposition that a diagnosis does not have to be made pursuant to the *AMA Guides 5th* in order to form the basis of a permanency rating under that guide. However, the Court does not find this case persuasive as the underlying statute is dissimilar.

and (5) the qualifications of the experts, including training and experience. *Houle v. Ethan Allen*, 2011 VT 62, ¶9.

11. Factors (1), (2), and (5) do not weigh in favor of either expert. Neither has a doctor-patient relationship with Appellant and every indication is that both experts were well-qualified and reviewed all pertinent records. Factors (3) and (4) weigh in favor of Dr. Lefkoe. His evaluation was more comprehensive and explained clearly the basis for his opinion and the computations he used to arrive at the permanency rating. Conversely, Dr. Wieneke was less thorough and less clear when articulating how he arrived at his permanency rating, at one point contradicting himself while testifying. Also, Dr. Lefkoe spent considerably more time evaluating Appellant than Dr. Wieneke, and Dr. Lefkoe drafted a significantly longer and more thorough report. Therefore, the Court finds that the appropriate whole person rating attributable to Appellant's shoulder limitations is 4% in accordance with Dr. Lefkoe's expert opinion.

12. In sum, the Court concludes that Appellant is entitled permanent partial disability benefits in accordance with a 6% whole person impairment rating. This amount is comprised of 2% for pain in accordance with Dr. Wieneke's expert opinion, and 4% for shoulder limitation in accordance with Dr. Lefkoe's expert opinion.

    Based on the foregoing it is hereby **ORDERED**:

    The clerk shall certify these findings to the Commissioner for compliance with 21 V.S.A. § 671.

    DATED                          , at Bennington, Vermont,


    _____
    John Wesley
    Presiding Judge

5