*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-217

MARCH TERM, 2014

| | | |
|---|---|---|
| Catherine Heller | } | APPEALED FROM: |
| | } | |
| | } | Commissioner of Labor |
| v. | } | |
| | } | |
| Bast and Rood Architects | } | DOCKET NO. T-12409 |


In the above-entitled cause, the Clerk will enter:

Claimant in this workers' compensation dispute appeals from a decision of the Commissioner of the Department of Labor. She contends the Commissioner erred in: (1) denying her claim for additional partial permanent disability benefits after her degenerative spine condition worsened; and (2) awarding her only a portion of the cost of a medical examination. Employer Bast & Rood Architects has cross-appealed from the decision, claiming that the Commissioner erred in awarding any payment for the medical examination. We affirm.

As found by the Commissioner, the facts relating to the claim for additional benefits may be summarized as follows. In January 2003, claimant slipped and fell on the ice while leaving work. Prior to the 2003 slip on the ice, claimant had a history of treatment for lower back pain following motor vehicle accidents in 1986 and 2001. Nevertheless, the employer accepted as compensable the complaints referable to her lower back. In 2007, the Department approved the parties' Agreement for Permanent Partial Disability Compensation (Form 22) based on a ten percent whole person impairment rating rendered by Dr. Thomas Grace in August 2005.[1]

In 2010, following a determination by the Commissioner as to the reasonableness of certain treatments, claimant resumed treatment for her compensable lower-back condition. She underwent a series of spinal injections, but the pain persisted. In February 2012, claimant was examined by Dr. Keith Harvie, a board-certified osteopath and orthopedic surgeon. In his

---

[1] The Form 22 settlement agreement left open claims for other alleged injuries from the fall. Claimant subsequently had a contested hearing concerning the impact of the fall on her hip, knees, cervical and thoracic spine, and sought specific treatment for her lumbar spine which the employer denied. Following a hearing, the Commissioner awarded claimant benefits in connection with her hip, and required the carrier to pay for the disputed lumbar spine treatment, but rejected claimant's claims for benefits associated with injuries to her knees, cervical spine, and thoracic spine. On claimant's appeal, a three-justice panel of this Court affirmed the Commissioner's ruling. Heller v. Bast & Rood Architects, No. 2010-405, 2011 WL 4979520, at *2 (Vt. June 1, 2011) (unpub. mem), http://www.vermontjudiciary.org/LC/unpublishedeo.aspx.

subsequent report, Dr. Harvie rated claimant's current whole person impairment referable to her lumbar spine at sixteen percent; the increase from the prior rating of ten percent was attributable to claimant's reduced ability to extend backwards. Dr. Grace also conducted an additional evaluation, in April 2012, concluding that claimant's whole person impairment to the lumbar spine had increased to fifteen percent. Claimant sought additional permanent partial disability benefits on the basis of Dr. Harvie's rating.

In evaluating the claim, the Commissioner acknowledged that Vermont law allows for an award of workers' compensation benefits to be modified at any time within six years from the date of the original award, "upon the ground of a change in the conditions." 21 V.S.A. § 668. She explained that because permanent partial disability benefits are not due until an injured worker "is as far restored as the permanent character of [the] injuries will permit," generally an injured claimant is not expected to become more disabled after reaching an end medical result. The concept of "end medical result" is based on a picture of an ever-improving condition, rather than one that is worsening. The statute allowing modification of permanent partial disability awards encompasses the alternate possibility that a claimant's condition might continue to deteriorate even after an end medical result is declared. However, the Commissioner also noted that any change in an injured worker's condition that results in an increased permanent impairment must be shown to have been caused by the work injury rather than non-work-related factors.

With respect to this causation question, the Commissioner noted that Dr. Harvie and Dr. Grace agreed that the degeneration in claimant's lumbar spine had worsened, causing decreased range of motion, but differed "as to the role, if any, that [c]laimant's 2003 work injury has played in the process." According to Dr. Harvie, the work-related fall had a " 'profound' impact on the rate at which the preexisting degenerative disease in her lumbar spine has progressed." He acknowledged, however, "that weight gain, lack of exercise and core strength, family history and the aging process in general all have probably contributed," and could not specifically quantify the increase in permanent impairment attributable to the fall and that attributable to the other causes.

The Commissioner acknowledged that Dr. Grace agreed that multiple factors had caused the degeneration in claimant's lumbar spine to worsen over time, including body mass, age, and genetics, and that Dr. Grace had further acknowledged that the 2003 fall had "likely played a role in the process." However, he "disagreed that trauma from the fall reasonably can be held accountable at this point for whatever ongoing degeneration has occurred." Instead, Dr. Grace identified the aging process "as the most likely causal factor," leading to increased arthritic degeneration, joint stiffness, and decreased range of motion. In Dr. Grace's opinion, the Commissioner noted, it was "difficult to speculate whether [c]laimant would have exactly the same range of motion in her lumbar spine now even if she had not suffered her 2003 work injury."

In assessing the conflicting expert opinions, the Commissioner noted that Dr. Harvie had examined claimant only once, some nine years after the work-related injury, while Dr. Grace had the benefit of examining her multiple times since that time, lending added credibility to his opinion on how claimant's condition had "evolved over time." In addition, the Commissioner noted that Dr. Harvie could not quantify the impact of the work-related injury on the continuing degeneration in claimant's lumbar spine, and he acknowledged that claimant could slow the rate of degeneration through diet and exercise. In the Commissioner's view, this lent additional

2

support to the inference "that such non-work-related factors are more likely driving [c]laimant's current circumstance." The Commissioner thus accepted Dr. Grace's opinion that "the natural aging process was the most likely cause of [claimant's] increased permanent impairment," and concluded that claimant had failed to prove that the work-related injury had caused her permanent impairment to increase since the initial award.

The Commissioner noted that when the employer accepted claimant's claim on account of the 2003 fall it was not accepting responsibility for the entire course of claimant's degenerative lumbar spine condition. That condition preceded the 2003 fall. What the employer accepted was the compensability of "the acceleration or aggravation of that condition" as a result of the fall. The permanency benefits claimant previously received compensated her for that compensable consequence. The Commissioner concluded, "[a]t some point, the causal relationship between her work injury and the continued progression of her disease becomes too attenuated . . . . That point has now been reached."

With respect to compensation for the cost of Dr. Harvie's examination, the Commissioner found that it was appropriate for claimant to consult with Dr. Harvie "to gain a better understanding of how the dysfunction in her lower back was evolving and to learn whether a surgical solution might ultimately become necessary." The commissioner further observed that it was proper for Dr. Harvie to review claimant's "voluminous" medical file and "conduct a thorough examination in order to provide well-reasoned and considered medical advice." However, the Commissioner also found based on Dr. Harvie's report and testimony that he had devoted "at least one-third of his time to issues that were unrelated to [c]laimant's compensable injury." Accordingly, the Commissioner awarded claimant two-thirds of the cost of the examination as "reasonable medical services provided as treatment for [c]laimant's compensable injury," for which employer was responsible under 21 V.S.A. § 640(a), for a total award of $3,441.

As noted, claimant has directly appealed to this Court from both the denial of her claim for additional permanent partial disability and the denial of one-third of the cost of Dr. Harvie's examination; employer has cross-appealed the award of two-thirds of the cost of Dr. Harvie's examination. See id. § 672 (supreme court may review questions of law certified to it by commissioner).[2]

Our review is limited. "We are bound by the Commissioner's findings so long as they are supported by the evidence." Cehic v. Mack Molding, Inc., 2006 VT 12, ¶ 6, 179 Vt. 602 (mem.). Findings may be overruled only where they "have no evidentiary support in the record or where the decision is based on evidence so slight as to be an irrational basis for the result reached. Id. (quotations omitted). "Where the Commissioner's conclusions are rationally derived from the findings and based on a correct interpretation of the law, we will affirm." Id. (quotation omitted).

---

[2] The two certified questions from the Commissioner for review are: "1. Is Claimant entitled to additional permanent partial disability benefits referable to her January 2003 compensable work injury? 2. Is Claimant entitled to reimbursement of Dr. Harvie's evaluation charges as a medical expense under 21 V.S.A. § 640(a)?"

Claimant asserts that she was entitled to compensation for the additional permanent disability resulting from the degeneration in her lumbar spine because, as the Commissioner noted, Dr. Grace acknowledged that the work-related fall had "played a role" in the degenerative process. The argument is unpersuasive. As the Commissioner noted, Dr. Grace stated in his written report that claimant's spinal degeneration would have progressed from her last evaluation in 2005 to her current condition entirely "apart from her 01/02/2003 work related injury." It was his opinion that claimant's decreased mobility was "due [to] an aging phenomena . . . to a reasonable medical certainty." Dr. Grace's testimony was to the same effect, that aging was the "main reason" for the increased stiffness in claimant's spine, combined with her weight and medical history. He did not believe that the work-related fall "as a probability . . . [was] . . . the reason why she increase[d] her arthritic changes to the extent she has and why she'd have a decreased range of motion."

It is the claimant's "burden of showing a causal connection between the injury and his employment and that he is therefore entitled to relief under the Workers' Compensation Act." Egbert v. The Book Press, 144 Vt. 367, 369 (1984). In the face of these various definitive statements from Dr. Grace, the Commissioner was entitled to conclude that claimant did not meet her burden of demonstrating that the work injury had a causal role in the deterioration in claimant's rated permanency between 2005 and 2012. The fact that Dr. Grace at one point in his report said that he could not "dismiss entirely her work related injury as having no contribution to her increase in her degenerative spine condition" does not undermine this conclusion. Dr. Grace's acknowledgment that he cannot rule out a possibility does not undermine his opinion as to probability. The Commissioner was entitled to consider Dr. Grace's report as a whole.

Moreover, the Commissioner was entitled to credit Dr. Grace's testimony as opposed to Dr. Harvie's based on the length of his relationship with claimant and the clarity and objective support underlying his opinions. See Houle v. Ethan Allen, 2011 VT 62, ¶¶ 9, 14, 190 Vt. 536 (mem.) (setting forth criteria for evaluating expert's persuasiveness and finding that Commissioner of Labor did not err in relying on one medical expert's opinion which "was based on facts, not speculation, and . . . offered . . . to a reasonable degree of medical certainty"). The Commissioner's findings were supported by the evidence, and her conclusion on causation was "rationally derived" from the findings and based on a correct application of the law. Cehic, 2006 VT 12, ¶ 6. Accordingly, we discern no basis to disturb the Commissioner's decision denying the claim for additional permanent disability benefits.

Turning to the partial compensation award for Dr. Harvie's charges, employer contends the Commissioner erred in characterizing the examination as compensable medical services for treatment under 21 V.S.A. § 640(a),[3] asserting that it was merely an independent evaluation. We need not reach the question of whether the Commissioner had discretion to order employer to pay for an independent impairment rating on the facts of this case, because we conclude that the Commissioner's conclusion that Dr. Harvie's consultation was a reasonable medical expense is supported by her findings which are, in turn, supported by the record.

The Commissioner noted that claimant had testified that "her purpose for consulting Dr. Harvie was to gain a better understanding of how the dysfunction in her lower back was evolving and to learn whether a surgical solution might ultimately become necessary." The Commissioner

---

[3] Section 640(a) provides that an employer "shall furnish to an injured employee reasonable surgical, medical and nursing services and supplies."

4

found that this was reasonable and appropriate, and that it was proper for Dr. Harvie to review claimant's "voluminous" medical file and "conduct a thorough examination in order to provide well-reasoned and considered medical advice." The fact that Dr. Harvie's evaluation had some characteristics of an independent medical evaluation does not undercut the Commissioner's factual conclusion that it constituted reasonable medical treatment.

For her part, the claimant faults the Commissioner for reducing the payment due from the employer to Dr. Harvie by one third. As the Commissioner noted, Dr. Harvie was asked to evaluate not only claimant's low back, but also her right hip and right and left knees—conditions the Commissioner had already decided were not compensable. See Heller, 2011 WL 4979520, at *1. The Commissioner concluded, based on review of Dr. Harvie's report and formal hearing testimony, that Dr. Harvie devoted at least one third of his time "to issues that were unrelated to [c]laimant's compensable injury."

The Commissioner's finding on this point is supported by the record. Dr. Harvie's twenty-six-page written report contained detailed diagnostic and therapeutic information on claimant's back, neck, shoulders, hips, and knees, including specific recommendations on current and future treatment of her spine. Given her finding, the reduction in employer's responsibility for the medical expenses to account for the portion of the bill unrelated to claimant's compensable injury was within the Commissioner's discretion. Accordingly, we affirm the Commissioner's decision to compensate claimant for two-thirds of Dr. Harvie's charges.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice


5