Turtle Fur Co. v. Repro Digital, No. S0690-11 CnC (Tomasi, J., Sept. 26, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                  CIVIL DIVISION
Chittenden Unit                                 Docket No. S0690-11 CnC


REPRO DIGITAL,
        Plaintiff / Appellee,

        v.

TURTLE FUR COMPANY,
        Defendant / Appellant.

## **Ruling On Appeal**

Defendant/Appellant Turtle Fur Company (Turtle Fur) appeals from a Small Claims Court judgment entered in favor of Plaintiff/Appellee Repro Digital. Repro Digital sued Turtle Fur alleging that Turtle Fur failed to pay $4,500 for "prepress" services Repro Digital rendered and invoiced in the course of Turtle Fur's production of a catalogue of Turtle Fur products. Turtle Fur answered and disputed that it owed the $4,500 because the parties had agreed on a rate for the services. Turtle Fur maintained that Repro Digital was attempting to change the terms of the arrangement between the parties.

The Small Claims Court held a hearing on June 2, 2011, took testimony, and made its findings of fact and conclusions of law orally. The Small Claims Court entered judgment in favor of Repro Digital in the amount of $4,000 plus court costs of $78.75. This appeal followed. This Court has reviewed the record, including the papers and the recording of the hearing

held in Small Claims Court.  The Court has also considered the parties'

memoranda of law on appeal as well as their arguments at a hearing held on

August 24, 2011.

## Standard of Review

An appeal from a small claims judgment is heard and decided "based

on the record made in the small claims procedure."  12 V.S.A. § 5538.  The

"appeal is limited to questions of law."  V.R.S.C.P. 10(d).  If the Small Claims

Court has applied the correct law, this Court will affirm its "conclusions if

they are reasonably supported by the findings."  *Maciejko v. Lunenburg Fire*

*Dist. No. 2*, 171 Vt. 542, 543 (2000) (mem.).  In turn, the findings of fact must

be supported by the evidence, *Brandon v. Richmond*, 144 Vt. 496, 498 (1984),

and such findings "must be construed, where possible, to support the

judgment," *Kopelman v. Schwag*, 145 Vt. 212, 214 (1984).  The Court's review

of the Small Claims Court's legal conclusions, however, is "non-deferential

and plenary."  *Maciejko,* 171 Vt. at 543 (quoting *N.A.S. Holdings, Inc. v.*

*Pafundi*, 169 Vt. 437, 439 (1999)).

## Background

The Small Claims Court did not make written findings.  Although the

parties do not dispute what appears to be an unofficial transcription of Judge

Villa's statement at the end of the hearing,[1] the Small Claims Court's

---

[1] Attached as Exhibit B to Turtle Fur's memorandum of law filed July 26, 2011 and as Exhibit 1 to Repro Digital's memorandum of law filed August 10, 2011.

2

findings of fact are difficult to discern. A review of the record from the June 2, 2011 hearing reveals the following background facts, none of which appear to be in dispute.

Turtle Fur is in the business of selling garments such as hats and scarves. It markets its products in printed catalogues. For at least four years prior to 2010, Turtle Fur had hired Repro Digital to perform services related to producing its catalogues. Specifically, Repro Digital would take digital photographs of Turtle Fur products and then apply certain "prepress" processes to those photographs. The prepress processes included a silhouetting process, which involved removing any "background" from the photograph so that the product image consisted only of the product itself. For the years prior to 2010, Repro Digital simply "selected" and "removed" the backgrounds from the Turtle Fur product photographs to complete the silhouetting process.

Tiffany LoRe started work as Turtle Fur's Marketing Director in May 2010. She wanted a new look for the magazine. Repro Digital conceded at the August 24, 2011 oral argument that it knew Turtle Fur was going for a new look for the upcoming magazine. A meeting was set up between LoRe and Repro Digital to determine what the new look would be and how to achieve it. In August 2010, LoRe met with Repro Digital representatives

Roger Moylan and John Goodman.[2]  At the meeting, LoRe explained to them that Turtle Fur wanted a different, more three-dimensional look in the catalogue.  At the time of the meeting, LoRe did not know what would be required from the graphics perspective to achieve that look.  The Repro Digital representatives who met with LoRe apparently did not know or appreciate that, in order to achieve the three-dimensional look, it was no longer adequate to simply select and remove the backgrounds as Repro Digital had done in the past.  To get the desired look, it was necessary to "clip out" the images—a more labor-intensive (and therefore more expensive) process.  There is no dispute, however, that Repro Digital was duly represented at the August 2010 meeting, and that LoRe showed Repro Digital's representatives precisely what Turtle Fur wanted

Following the meeting, in a letter dated September 10, 2010, Moylan wrote to LoRe, and supplied a quotation for the prepress processes at $9.11 per image.  Although LoRe also had a quote from a competitor of Repro for $7.00 per image, Turtle Fur opted to use Repro Digital based on its track records with the company.  Digital LoRe put in an order with Repro Digital for the work.

---

[2] The documentation in the record does not indicate Moylan's position with Repro Digital, although it appears he was involved in sales.  The testimony at trial was that Goodman was an independent contractor hired by Repro Digital to take the digital photographs.  There was also testimony that Repro Digital's President and Owner Chuck Siegel was present, albeit only briefly.

Repro Digital began its prepress work on September 29, 2010.  Repro Digital did not initially realize that the nature of the prepress work was different than it had been in the past until it had already processed many images.[3]  Upon realizing the issue, it made a telephone call to LoRe asking for increased compensation.  It is undisputed that, during that call, she indicated she was not authorized to approve additional funding.

On October 20, 2010, Moylan sent LoRe an email stating as follows:

> About a week ago you and I had a discussion regarding Repro Digital's prepress charges to Turtle Fur.  I brought it up then because the requirements have significantly changed since last year and years prior.  For the past 4 years the product files we created were not "clipped out" per se., we prepared single layer photoshop files with the background deleted so it was not a clipping path but rather the background selected/removed.

> This year we were required to perform actual clipping paths which has taken us an [sic] 60 additional hours as compared to last year.  We had at any given time two to three additional employees working with Kevin in order to accommodate your schedule.  About half of the hours were incurred on two Saturdays and Sundays.  Based on 30 hours at $75.00 ($2,250.00) and 30 @ $112.50 ($3,375.00) for a total of $5,625.00.

> In consideration of our long standing business relationship we are willing to discount the cost 20% to $4,500.00 or $12.50/Image (versus $9.20/Image for the past 4 years)) which will make us whole.

---

[3] There was testimony that Repro Digital would have noticed the difference immediately, except for the fact that it had hired a new technician to perform the prepress work, and the new technician did not realize that the Turtle Fur job was different than it had been in the past.

Repro Digital did not receive any reply to this email. Repro Digital completed its prepress work on October 22, 2010.[4] On December 1, 2010, Repro Digital sent Turtle Fur an invoice for $4,500. Turtle Fur refused to pay, and this litigation followed.

## Analysis

On appeal, Turtle Fur contends that there is no evidence to support the conclusion that the parties agreed to any services (or prices, apparently) other than those set out in the September 10, 2010 letter from Moylan to LoRe. Turtle Fur maintains that the Small Claims Court erred in concluding that there was no "meeting of the minds" because the parties did agree on both price and scope of services. Turtle Fur also argues that there was no mutual mistake, and that Repro Digital made a unilateral mistake, and therefore cannot avoid the contract. Repro Digital asserts that the quote in the September 10, 2010 letter was for the same kind of work that Repro Digital had done for Turtle Fur in prior years, but that in 2010 LoRe requested a "new look" for the catalogue that required Repro Digital to do more work than it had in prior years, thus increasing the cost of prepress services. Repro Digital says that it communicated this to Turtle Fur, received no objection, and thus reasonably interpreted Turtle Fur to be accepting the increased costs.

---

[4] There is no dispute as to the quality of Repro Digital's prepress work.

6

The Small Claims Court repeatedly stated that there was no "meeting of the minds" in this case. That term is shorthand for two essential elements of contract formation: an offer by one party and the acceptance of that offer by the other party. *Starr Farm Beach Campowners Ass'n v. Boylan*, 174 Vt. 503, 505 (2002) (mem.). Courts look to the intent of the parties to determine the moment of contract formation. *Catamount Slate Prods., Inc. v. Sheldon*, 2003 VT 112, ¶ 17, 176 Vt. 158. Intent to be bound is a question of fact, determined by the objective signs of the parties in a given set of circumstances. *Id.*

A quotation of price is commonly understood as inviting an offer rather than as making one, even when directed to a particular customer. Restatement (Second) of Contracts § 26 cmt. c. In some circumstances, a quotation may nevertheless be an offer. *See id.* ("In determining whether an offer is made relevant factors include the terms of any previous inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom a communication is addressed."). Here, the September 10, 2010 letter was directed only to Turtle Fur. In addition, the parties' prior dealings supplied many of the general terms that would apply. Finally, and critically, the September 10 letter was in response to the specific circumstances of the August 2010 meeting.[5] This Court concludes that the

---

[5] Even if the quotation in Repro Digital's September 10, 2010 was not an offer, Turtle Fur's subsequent order for the work would be, and Repro Digital's performance of the work was its acceptance.

Small Claims Court's finding that there was no meeting of the minds is unsupported by the evidence. To the contrary, the undisputed facts establish that the parties did form a contract. LoRe plainly outlined the product Turtle Fur required to representatives of Repo Digital. Repro Digital responded with its statement of terms to obtain that product. While the terms of the contract turned out to be adverse for Repro Digital, since it quoted Turtle Fur a lower price than it would have if Repro Digital had appreciated that more work was involved, a contract was still formed.

The Small Claims Court also may have concluded that there was no "meeting of the minds" due to mistake. *Cf. LoPresti v. Rutland Reg'l Health Servs., Inc.*, 2004 VT 105, ¶ 48, 177 Vt. 316 (same argument). Turtle Fur contends that Repro Digital was the "expert" in this area and that it made a unilateral mistake by miscalculating what needed to be done to provide the services Turtle Fur wanted. *See* Turtle Fur's Mem. of Law at 2 (filed July 26, 2011). Repro Digital maintains that it was Turtle Fur that made a mistake by failing to understand that the new look it wanted would result in additional prepress charges. Repro Digital's Mem. of Law at 2 (filed Aug. 10, 2011). The Small Claims Court concluded that both parties failed to realize at the August 2010 meeting that what Turtle Fur wanted would require more work.

Regardless of whether the mistake was unilateral or bilateral, the adversely affected party—Repro Digital—cannot avoid the contract if it bears

8

the risk of the mistake. *See* Restatement (Second) of Contracts §§ 152, 153 (party adversely affected by a mutual mistake (§ 152) or by that party's unilateral mistake (§ 153) may in neither case void the contract if that party bears the risk of mistake). Here, the Small Claims Court found that Repro Digital, and not Turtle Fur, was the "expert" in how the prepress process is actually done. The Small Claims Court also found that most of the responsibility for not recognizing that what Turtle Fur wanted would cost more rested with Repro Digital. In essence, the Small Claims Court concluded that Repro Digital bore the risk of mistake under the circumstances. That is consistent with the teachings of the Restatement. See *id.* § 154 cmt. d, illustration 6 (where A offers to construct a building for $150,000 having mistakenly underestimated the amount of labor required to do the work by $50,000, and where B accepts the offer with no reason to know of A's mistake, then A cannot avoid the contract). Having reached that conclusion, the Small Claims Court erred as a matter of law by concluding that Repro Digital could avoid the adverse effect of its contract to perform the prepress work Turtle Fur requested at $9.11 per image. Repro Digital could *not* avoid the contract because it bore the risk of mistake.

Repro Digital also argues that, because it emailed Turtle Fur on October 20 and stated that the prepress work had taken Repro Digital more time than in the past, and because Turtle Fur did not reply, Turtle Fur accepted the increased costs by silence. To prove that the parties modified

9

their contract, Repro Digital is required to show mutual assent. *See First Hartford Realty Corp. v. Ellis*, 434 A.2d 314, 318 (Conn. 1980); 17A Am.Jur. 2d *Contracts* § 507 (WL updated Aug. 2011) ("A valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration." (footnotes omitted)). The Restatement sets out the relatively few exceptional cases when silence operates as acceptance. Restatement (Second) of Contracts § 69. None of those circumstances are present in this case. Turtle Fur did not silently take the benefit of Repro Digital's services: it already had a contract for those services and was entitled to rely on it. Neither is there any evidence that Repro Digital stated or gave Turtle Fur reason to understand that it could manifest assent by silence, or that because of the parties' previous dealings silence was a reasonable form of acceptance. Further, it is undisputed that LoRe did not give consent to increased fees during her telephone call with Repo Digital the week prior to the email. Since Turtle Fur had a contract with Repro Digital, it was entitled to rely upon and enforce the terms of that agreement.

Near the end of its conclusions, the Small Claims Court stated that "the fact is that the defendant got the benefit of a different and better product than what they had had before." To the extent the Small Claims Court was invoking the doctrine of quasi-contract, that was error because there is a contract in this case that determines the parties' rights. *See* 1 Williston on

10

Contracts § 1:6 (WL updated May 2011) ("A court properly resorts to quasi-contract only in the absence of an express contract or contract implied-in-fact.").

## **ORDER**

The judgment of the Small Claims Court is reversed. Judgment will be entered for Defendant Turtle Fur.

Dated at Burlington, Vermont this ____day of  September, 2011.


-------------------------------
Timothy B. Tomasi
Superior Court Judge