*Starr v. Galfetti*, No. 83-2-15 Wncv (Teachout, J., May 20, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 83-2-15 Wncv** |

**TRACEY STARR**                                                            **on appeal from**
       **Defendant–Appellant**                         **Docket No. 360-6-14 Wnsc**

       **v.**

**TERI GALFETTI**
       **Plaintiff–Appellee**

### SMALL CLAIMS APPEAL
### Decision

Tracey Starr, Defendant in the Small Claims case below, appeals from the Findings and Conclusions and Judgment of the Small Claims Court dated January 7, 2015. Both parties represented themselves in Small Claims Court. Mr. Starr challenges the ruling that he is obligated to reimburse Ms. Galfetti for half of the cost she paid to repair a shared, private water line that connects both their homes to the City of Montpelier's public water system.

In an appeal from a Small Claims Court judgment, it is not the function of the Superior Court to substitute its own judgment for that of the Small Claims Court Judge. See *Whipple v. Lambert*, 145 Vt. 339, 340–41 (1985). Rather, the role of the Superior Court is to determine whether or not the evidence presented at the hearing supports the facts that the Judge decided were the credible facts, and whether or not the Judge correctly applied the proper law and procedure.

In the Findings and Conclusions, the Small Claims Judge found that the parties had made an agreement, which was a binding contract, that required Mr. Starr to pay half of the repair expense, that he breached that obligation by not reimbursing Ms. Galfetti for half after she had paid the whole cost of $6,394.00, and he thus owes her $3,197.00 plus costs. Mr. Starr appealed.

Overshadowing this case is the circumstance that Ms. Galfetti has not allowed water to be restored to Mr. Starr's home until he pays his share. (The valve to restore water to his home is on her property.) The Small Claims Judge noted that he had no authority to order Ms. Galfetti to restore water service to Mr. Starr's home, which is true because the Small Claims Court only has authority to issue judgments for money and not orders for action to be taken or not taken.[1] The Judge nonetheless found that Mr. Starr had breached the agreement that the parties had made, and that he owed her the money.

On appeal, Mr. Starr claims that the Judge erred in his finding of fact about the terms of the agreement. He disputes that any agreement he made requires him to reimburse her as a

---

[1] The Civil Division of the Superior Court, in a proper action, does have that power.

precondition to the restoration of water to his home. The issue before this Court is thus whether or not the evidence presented at the hearing supported the Court's finding of fact that the parties had made an enforceable contract with the terms as found by the Small Claims Judge, and if so, that such contract was breached by Mr. Starr.

Facts

The shared, private water line extends from the City water main to Ms. Galfetti's house, where it enters the basement, proceeds to the other side, and then extends to Mr. Starr's house, which is immediately behind Ms. Galfetti's house.  Mr. Starr's house has no other source of water.  According to the testimony, the shared line has been in place since the homes were in common ownership many years ago and the deeds to the houses are silent about the parties' respective rights and obligations.  In January 2012, the privately owned portion of the line ruptured in some manner between Ms. Galfetti's house and the public line.  The City turned the water off until the private line could be repaired.

The evidence supports the fact that Ms. Galfetti and Mr. Starr agreed to split the cost of the repair.  The evidence also supports the finding that they made an agreement that it was important to restore water service to both homes as soon as possible.  However, at the time they reached this agreement, neither had the ready means to pay for the repairs.  They learned of the possibility of grant money available through the City.  The evidence supports an agreement that each would apply for a Housing Preservation Grant loan through the City.  This type of loan apparently provides upfront funding for the repair, resulting in a lien against the property with no obligation to pay back the grant funds until the house is sold or refinanced.[2]  Both parties began the process of applying for such a grant.

What happened was that Ms. Galfetti applied for a loan for the full amount and proceeded with her application more quickly than Mr. Starr, although he also pursued a loan.  When Ms. Galfetti's loan was approved, she immediately had the repair work done.  As she testified at the small claims hearing, "time was of the essence."  While a lack of running water in a house is a serious habitability defect any time of the year, it is all the more so in the winter, when the water may be needed to operate a boiler and pipes with still water are more likely to burst.

In the course of the repair work, a valve on the line leading to Mr. Starr's house was closed.  The valve is in Ms. Galfetti's basement.  The valve was left closed by a plumber at the conclusion of the repair work.  As such, Ms. Galfetti had water; Mr. Starr did not.  Ms. Galfetti sought payment from Mr. Starr for half of the repair expense she had paid out of grant funds.  She refused to turn his water back on until he paid her.  All of the evidence at the hearing was to the effect that Mr. Starr had been diligently pursuing his Housing Preservation Grant loan so that he would be able to pay his share of the expense but the process was not moving as quickly on his application as it did for Ms. Galfetti.

---

[2] There is some indication in the record that these are interest-free loans; if there is interest, the rate is unknown.  If a judgment for Ms. Galfetti that is collectible immediately and accrues interest at 12% per year were upheld, there is a possibility that such a judgment would have given Ms. Galfetti a substantial windfall in that she would receive a cash payment or judgment with interest running while she had no obligation to use the funds to retire the loan until some indefinite time in the future.

At this point, the relationship between the parties appears to have soured significantly. Since the repair in the winter of 2012, Ms. Galfetti has refused to restore water to Mr. Starr's home. He has refused to pay his half of the repair expense.[3] He is concerned that the lack of water running through the line from Ms. Galfetti's house to his for the last few winters probably has caused that line to burst.

The deeds to the houses are silent as to the parties' rights and obligations with respect to the water line.[4] The parties to a shared easement are free to agree to the details of their obligations to each other. Restatement (Third) of Property (Servitudes) § 4.13 cmt. a. This is what the Small Claims Court concluded had happened in this case: that the parties came to an agreement—made a contract--about repairing the water line. The Court further found that Mr. Starr broke the agreement or breached the contract. It ruled that Ms. Galfetti was entitled to compensation based on breach of contract.

The problem with the Court's ruling is that while there is evidence that the parties agreed to share the expense of the repair 50/50, and they agreed on each applying for a Housing Preservation Grant loan to raise funds because each presumably was unable to pay for the repair out of pocket, there is no evidence of any agreement as to two terms that are critical to the Court's ruling:

1. That either party could unilaterally pay for the entire repair and then be entitled to immediate reimbursement from the other (while the funding party has no obligation to repay until sale of the property, which could be years away); and
2. That Mr. Starr could not have water until he paid his share of the funding.

To Mr. Starr's argument that the agreement was that water would be restored as soon as possible no matter who was paying for it upfront—due to the urgency of the situation and because one loan necessarily would come through before the other—the Small Claims Court ruled:

> The problem with this argument is that there is no evidence to support Mr. Starr's contention of an implied term. While the parties intended to take actions that would repair the leak and restore the flow of water from the City's lines to the houses, there was no discussion about whether a party would have a right to block the flow of water after the repair if the other failed to contribute.

---

[3] Frustrated by the lack of water at his house, Mr. Starr sued the City of Montpelier in the Civil Division of the Superior Court. That suit ended in a judgment for the City on the grounds that the City had no responsibility as a matter of law for what happened. He has never sued Ms. Galfetti.

[4] Ordinarily, then, the Court would look to the law of easements to resolve this dispute. In that regard, the Court notes that, in the absence of detailed arrangements between the parties, the law anticipates that the parties will "exercise their respective rights and privileges in a spirit of mutual accommodation." Restatement (Third) of Property (Servitudes) § 4.10 cmt. a. Parties who share the use of a servitude, such as the water line in this case, are obligated to share the responsibility for maintaining it and to *not* interfere with each other's use and access to it. *Id.* §§ 4.9, 4.13 cmt. d. Conflict resolution in this area of the law often requires resort to the strong public policy favoring the productive use of land. *Id.* § 4.9 cmt. b. As a general matter, intentionally depriving a residential home of potable water, rendering it uninhabitable, is substantially at odds with public policy.

Small Claims Decision 5–6. The Court went on to note that the circumstances that confronted the parties had never been anticipated by them. With no such agreement in place, however, the Court then should have resorted to the law of easements. Instead, it reasoned without reference to the law of easements that Ms. Galfetti was within her rights to resort to "self-help," and in doing so it seems to have reasoned that there was an implied term that Ms. Galfetti had a right to withhold water service until paid for half the cost. The Small Claims Court claimed to be basing the decision on breach of contract but there was no evidence at the hearing that the parties had agreed to either of the two terms described above, both of which are critical to its ruling.

The Court found that the parties agreed to split the cost of the repair and to do so by both applying for loans. That agreement is supported by evidence introduced at the hearing. Neither the findings nor the evidence at trial reveals any meeting of the minds on anything else, much less how they would handle what in fact occurred. "An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other." *Starr Farm Beach Campowners' Ass'n, Inc. v. Boylan*, 174 Vt. 503, 505 (2002). The general agreement to split the cost of the repair through mutual applications for public grants is an insufficient basis to warrant any inference that the parties agreed that Ms. Galfetti could refuse to restore Mr. Starr's water supply or had any self-help right to do so, or that she had a right to current indemnification for her unilateral decision to pay for the entire repair through a grant for the full amount that did not need to be repaid until the house sold.

There was insufficient evidence at the hearing to support the Small Claims Court's findings of the contract terms that were the basis of the Court's finding of breach of contract. Ms. Galfetti's evidence was insufficient to prove the contract that she claimed was breached. The Small Claims Court ruled in her favor in error.

This Court is aware that this ruling does not resolve the problem between the parties, and that is unfortunate. However, on an appeal from a Small Claims ruling, this Court is limited to determining whether or not the Small Claims ruling was properly decided. It does not have the authority to take over the case and decide it on grounds that were not presented by the parties. Other legal avenues for resolving the parties' disagreements remain available.

## ORDER

For the foregoing reasons, the judgment of the Small Claims Court is reversed. Judgment will enter for Mr. Starr.

Dated at Montpelier, Vermont this ____ day of May 2015.

_____
Mary Miles Teachout
Superior Judge

4